[Civ. No. 5525. First Appellate District, Division Two.—June 12, 1926.]

## G. S. BACKMAN, Respondent, v. GUADALUPE REALTY CO. (a Corporation), Appellant.

[1] BROKER'S COMMISSIONS—EXCHANGE OF PROPERTIES—CONSUMMATION BY OWNER—WHEN COMMISSION NOT EARNED.—Where a real estate broker's contract obligates the owner to pay a commission upon certain terms and conditions, which are specified with certainty, and it is reiterated in the contract that the commission is to be paid if the broker shall secure an acceptance of the owner's proposition to exchange his property on the terms and conditions specified, and the exchange is not consummated upon the basis stated, but the owner negotiates and concludes the exchange upon substantially different and less favorable terms than those stated in the contract, the broker is not entitled to recover the agreed commission because of the fact that he originally brought the parties together.

[2] ID. — PRODUCTION OF PURCHASER — COMMISSION EARNED — SPECIAL EMPLOYMENT.—The general rule that an agent performs his part of the contract of employment when he produces a purchaser able, ready, and willing to buy upon the terms specified or accepted by the owner, is not applicable where the agent, by his contract of employment, undertakes a special task and then fails to perform it.

---

(1) 4 C. J., p. 883, n. 33.   (2) 9 C. J., p. 596, n. 33, p. 602, n. 57.

1. Broker's right to compensation where owner sells property to customer at less than stipulated price, see notes in Ann. Cas. 1913E, 786; 43 A. L. R. 1103; 44 L. R. A. 352.

2. See 4 Cal. Jur. 598; 4 R. C. L. 322.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edmund P. Mogan, Judge. Reversed.

The facts are stated in the opinion of the court.

W. W. Sanderson for Appellant.

Esmond Schapiro for Respondent.

LANGDON, P. J.,—This is an appeal from a judgment for plaintiff for $5,000 and interest, upon a written contract of employment as a real estate broker. There are three brokers equally interested in the recovery, Hooper, Wilson, and Schapiro & Co. The plaintiff is an assignee for the purpose of bringing the action. Although Hooper is the person who negotiated the contract and whose name appears alone therein, it was understood at the time by both parties thereto that the other two brokers, Wilson and Schapiro & Co., were equally interested with Hooper.

The transaction out of which the controversy grew was an exchange of real property. The defendants owned an apartment house in San Francisco; the other party to the proposed exchange, O'Rourke, a farm in Colusa County. O'Rourke had been introduced to the city property by the broker Wilson on November 8, 1922. Wilson offered this property to O'Rourke, with encumbrances totaling $75,000, for his ranch, free and clear of encumbrances. The following day O'Rourke called at the office of Schapiro & Co., another real estate broker with whom this apartment house had also been listed for sale. This firm also showed O'Rourke the apartment house and succeeded in getting him to sign an offer, open for ten days, by which he was to exchange his ranch for the apartment house, subject to an encumbrance of $50,000. This offer was promptly rejected by the defendant.

It so happened that O'Rourke had an intimate friend in San Francisco, Abe Cohen, who was under contract with the defendant to lease its said apartment house. O'Rourke met his friend Cohen and told him about the apartment house and Cohen took him to the office of the defendant on the evening of November 9th and introduced him to the

vice-president of the defendant company, Mrs. Bories. Before this meeting, however, the defendant had been informed by Wilson of O'Rourke's interest in the apartment house and had rejected his offer therefor made through Schapiro & Co., so it was not unprepared for its reception. However, after this conference, O'Rourke returned to his home in Colusa without anything having been accomplished in the transaction. Schapiro & Co. did not know who was the owner of the apartment house when they offered it to Mr. O'Rourke. It had recently been sold through Edward J. Hooper and they went to him for information. He drew up a contract by which he was to act as agent in the transaction and receive a commission of $3,000, which contract was signed by the defendant.

By a supplemental agreement among the three brokers, they agreed to share the commission "irrespective of who closes the deal," but that agreement does not concern us here, because there is no dispute about it or its effect. The agreement for the payment of a commission, which is the contract upon which recovery was had, is the all-important consideration in this case and we set it forth in full:

"Exchange Agreement.

"This agreement witnesseth: That the undersigned ————, owner of the following firstly described property situate, lying and being in the City and County of San Francisco, State of California, and bounded and particularly described as follows, to-wit:

"Lot and improvements situate on the Westerly line of Leavenworth Street 54.6 feet South of Ellis Street, South 83 feet by uniform depth of 56.6 feet to a rear street, and known as No. 345 Leavenworth Street, subject to a first bank mortgage of $50,000 bearing interest at the rate of 6% per annum and Deed of Trust for $25,000, for a period of five (5) years, with interest at the rate of 8% per annum, payable in monthly installments of not less than $250 per month; and subject, also to a lease for ten (10) years at a monthly rental of $1,000. Also assignment of rents.

"which we agree to exchange for the following secondly described property owned by ———— situate in County of Colusa, State of California, and bounded and particularly described as follows, to wit: (Here follows a description of the Colusa property.)

"Terms: We hereby agree to exchange the above described property No. 345 Leavenworth Street, San Francisco, Cal., subject to the above mentioned encumbrances, for the above described Colusa County property, free and clear of all encumbrances except levys and obligations incurred in the Irrigation District in which the 160 acres are included.

"and the undersigned hereby authorize Edward J. Hooper to act as our agent in negotiating an exchange, and agree that if he shall secure an acceptance *of the above proposition* to exchange the above described property *on the above terms,* that we will within 15 days furnish title insurance or abstract of title certified to date and a Grant, Bargain and Sale deed conveying title to the property first above described; and will allow 15 days for the furnishing of title insurance or abstract of title certified to date and a Grant, Bargain and Sale deed conveying title to the above secondly described property.

"And it is further agreed with the said agent that when he has secured an acceptance in writing of *the above proposition* that we will then pay to said agent at his office in San Francisco, the sum of three thousand dollars ($3,000) on demand for services rendered; and it is understood that said agent may also act as agent for the owner of the above secondly described property, from whom he may also receive a commission."

The foregoing is followed by provisions which do not concern us upon appeal. The portion of the contract relating to the payment of commissions was modified on the same date by the following agreement:

"In relation to the proposed exchange of the O'Rourke property situate in the County of Colusa, California, and the Guadalupe Realty Company's property No. 345 Leavenworth Street, San Francisco, Cal., we hereby agree to pay to Edward J. Hooper, the sum of five thousand ($5,000) Dollars on demand, for services rendered, in the event that the O'Rourkes do not pay him a commission in this proposed exchange. The Guadalupe Realty Company is to receive credit for any commission obtained from the O'Rourke end of the transaction.

"The foregoing is subject to the exchange being consummated."

Both of these instruments were signed by the vice-president of the Guadalupe Realty Company, on its behalf.

A representative of Schapiro & Co. went to Colusa to try to interest Mr. O'Rourke further in the transaction, but without success.

At this point in the narrative there is a conflict in the evidence as to whether or not the brokers abandoned the contract of employment. We should be inclined to say that they did, were we trying the facts, but since there is some evidence which creates a conflict upon that issue and the trial court has found against the defendant, we must accept that finding and assume that the brokers were still intent upon fulfilling their contract.

Nothing happened, however, to offer the brokers any encouragement for about a week, when O'Rourke again consulted with his friend Cohen about the matter. Cohen then reopened negotiations with the defendant, directly, upon a different basis. On November 19, 1921, the defendant agreed with Cohen that it would make the exchange of the properties, the ranch to be free and clear of encumbrances, and the apartment house subject to a first mortgage of $50,000 and a second deed of trust for $15,000, and Mr. O'Rourke to pay $2,500 cash upon the completion of the transaction and $1,000 at the signing of the agreement. The exchange was finally consummated after negotiations between the principals, by O'Rourke, giving his ranch, free of encumbrances and a diamond ring valued at $1,000, and receiving the apartment house subject to $66,000 in encumbrances, but free from the burden of a lease which it was to carry under the defendant's original offer, under which lease defendant would have received a bonus of $7,500; also linoleums, stair carpets, etc.

It thus appears that by the transaction as finally consummated the defendant received several thousand dollars less than the amount called for under the commission contract.

[1] The question is presented: Under the peculiar terms of the contract in this case for the payment of a commission (under which the plaintiff must recover, if at all), when the principal negotiated and concluded an exchange upon substantially different and less favorable terms than those stated therein, may the plaintiff recover because of the fact

that he, originally, brought the parties together? We think that to answer that question in the affirmative would be to conclude that contracts of this type were not governed by the fundamental rules of contract law. Here we have an express contract, obligating the defendant upon certain terms and conditions, specifying them with certainty and reiterating that the commission is to be paid if the broker shall secure an acceptance of the *above proposition* to exchange the property on the *above terms.* [2] The general rule is that an agent performs his part of such a contract when he produces a purchaser able, ready, and willing to buy upon the terms specified by the owner. Upon a general contract of employment, certainly, the owner may make concessions to a purchaser without loss of the commission to the broker, but there is a distinction in fact recognized by the authorities, between a general and special contract of employment in a matter of this kind. It appears that where the broker has undertaken a special task by his contract of employment and fails to perform it, the fact of having first introduced the buyer and seller will not entitle him to recover. The case of *Naylor* v. *Ashton,* 20 Cal. App. 544 [130 Pac. 181], is directly in point. It is therein stated: "In denying the petition for a rehearing we deem it proper to again call attention to the fact that the only employment of the broker evidenced by the writing relied on was to procure an acceptance of the specific offer made by defendant, which the broker never succeeded in doing, either within the ten days allowed for such acceptance or at all. The broker was not employed generally to effect a sale or exchange of defendant's property, but only to procure an acceptance by Mrs. Thompson of the offer to exchange and sell contained in the writing signed by defendant."

The case of *Holland* v. *Flash,* 20 Cal. App. 686 [130 Pac. 32], involves a legal question similar to the one before us. It was there said: "We do not construe this agreement as one generally employing or authorizing plaintiff's assignors to act as agents to negotiate or sell this property, or to do any act or thing connected with its negotiation or sale, other than to procure if possible the Atwood exchange upon the terms specified. Failing in that regard, the contract by its terms was at an end, and did not cover or purport to cover

any agreement with reference to subsequent deals, sales or exchanges.''

The case of *Jauman* v. *McCusick*, 166 Cal. 517 [137 Pac. 254], also contains the following pertinent language: ''Here, however, the defendant's agreement was not simply to pay a commission to the brokers upon their making a sale or exchange of the property. Her agreement was to pay one thousand eight hundred and fifty dollars for their services in securing the particular agreement which was secured. . . . She agreed to pay a commission for securing a specific agreement. Such agreement having been secured, she was liable under the precise terms of her contract.''

Our conclusion upon this important phase of the case makes it unnecessary to consider the other objections raised by the appellant, as the matter we have discussed herein is conclusive against the plaintiff's right of recovery under the facts of this case.

The judgment is reversed.

Sturtevant, J., and Nourse, J., concurred.