[L. A. No. 21225.   In Bank   Mar 14, 1950.]

J. ELBERT JONES, Appellant, v. JAMES POLLOCK et al., Respondents.

Bruce Mason and Clark Heggeness for Appellant.

Raymond J. Kirkpatrick and Moses E. Lewis for Respondents.

EDMONDS, J.—J. Elbert Jones, a building contractor, sued to foreclose a mechanic's lien and to recover a balance claimed due under a written contract to construct a residence for James and Jane Pollock. The court determined that recovery must be limited to "the estimated cost" stated in the contract, plus extras, rather than the amount of the cost of construction. The appeal of Jones from the judgment presents as a question of law the nature and effect of the agreement made by the parties.

By the "Contract For Building," Jones agreed ". . . for the consideration hereinafter named to furnish the necessary labor and materials . . . and to perform and complete according to this agreement . . . the buildings described, in a good workmanlike and substantial manner, and within the estimated cost of $13,100 and the contract or shall receive for his services % 15% of cost of construction which is included in estimated cost. . . ." In the event an authorized architect or engineer is required by law or is demanded by the owner, ". . . an additional charge will be made for such engineer or architect." The "cost of the construction" as defined by the parties, ". . . shall be understood as an estimate only by the contractor, who, in no way shall be responsible for the fluctuation of prices of labor or materials. No alterations or deviations from plans or specifications shall be had or done without written consent of the owner and the increase or extra charge therefor agreed to."

Jones completed the building at a cost to him of $20,421.87. In his final bill to the Pollocks, he added the 15 per cent contractor's fee to that amount, making a total of $13,005.15 after crediting $10,480 which had been paid on account.

The Pollocks insist that $13,100 is the maximum price chargeable under the agreement. They also claim that Jones did not complete certain work, necessitating the expenditure of $2,431.73 by them. Deducting this amount and the $10,480 paid on account from $13,100, leaves a balance of $188.27, which they offered to pay in full settlement of all obligations under the contract.

There is no dispute as to the construction cost of the building and its value as constructed. According to the evidence the shortage of materials had required an unusually long time for construction. There was also a substantial increase in the cost of labor and materials. Several changes from the original plans were made upon the order of Mrs. Jones, which added materially to the building cost.

The trial court found that by the terms of the contract the maximum price payable by the Pollocks is $13,100 plus the cost of extra labor and materials amounting to $1,763.52, which sum includes the 15 per cent commission. From the total of those sums was deducted the $10,480 paid on account with an additional allowance for $2,431.73 paid by the Pollocks to complete the building. The judgment for Jones of $1,951.79 is based upon these figures.

The contractor contends that as a matter of law the amount of $13,100 was only an estimate of cost; that the contract expressly excused him from responsibility for fluctuation of prices; and his agreement was to build upon a cost plus basis and not for a fixed fee amount. As another ground for a reversal of the judgment he argues that if the contract is ambiguous, it should be construed to require payment of the prevailing market rate rather than in a manner which will give one party to it an inequitable or unjust advantage over the other one.

The owners agree that the contract is one to build on a cost plus basis. But as they read the agreement, its terms support, as a matter of law, the finding that the maximum cost was to be $13,100. They argue that "within $13,100" means a ceiling price, and the provisions for additional charges for "extras" and for architects' or engineers' fees require the same in-

terpretation. A further point upon which they rely is that any ambiguity in the contract must be construed against the contractor, who prepared the agreement.

"The language of a contract is to govern its interpretation, if the language is clear and explicit; and does not involve an absurdity." (Civ. Code, § 1638.) As stated in *Miranda* v. *Miranda*, 81 Cal.App.2d 61, 69 [183 P.2d 61]: "When a contract is in writing the instrument itself shall be considered as containing all the terms of the agreement. . . ." And where a contract has been reduced to writing, the instrument measures the rights, duties and obligations of the parties. (*Harding* v. *Robinson*, 175 Cal. 534 [166 P. 808]; Code Civ. Proc., § 1856.)

█ The contract sued upon by Jones provided that the work should be done ". . . in a good workmanlike and substantial manner, and within the estimated cost of $13,100. . . ." But it explained the obligation of the owners by the statement that ". . . the cost of the construction of said building . . . shall be understood as an estimate only by the contractor, who, in no way, shall be responsible for the fluctuation of prices of labor or materials." In construing a contract, the instrument must be examined as a whole (Civ. Code, § 1641.) Considering these provisions together, the conclusion is inescapable that $13,100 was merely an estimate of the cost of the building and not a ceiling price. It is also of considerable significance that the word "within" used in connection with the amount of $13,100 is limited by the term "estimated," which immediately follows it. The presence of the restrictive and qualifying word "estimated" and the later provision that the figure ". . . shall be understood as an estimate only by the contractor, who, in no way shall be responsible for the fluctuation of prices of labor or materials," make entirely unreasonable a construction of the controversial provision as fixing a ceiling price of $13,100.

█ The express reference to "extras" and to architects' or engineers' fees may well have been incorporated to designate the scope of the contractor's authority, or to authorize their inclusion as part of the chargeable cost. In the light of the express language to the contrary, those provisions do not justify an interpretation of them which would be consistent with a ceiling price. █ Aside from the "estimated cost" the contract consistently refers in general terms to the eventual cost, using words such as "20% of the total price charged" rather than a specific sum. At least by implication, this factor

tends to support the conclusion compelled by express language that $13,100 was but an estimate of the cost of the building.

■ Under this construction of the contract, the trial court erroneously limited the recovery under it to an amount based upon the estimated price. In the absence of evidence of fraudulent inducement or misrepresentation or lack of authorization for some portion of the work, the contractor is entitled to recover the cost of construction plus his fee.

■ It appears that there is substantial evidence in the record to support the trial court's determination that the plaintiff is entitled to recover for materials and labor furnished over and beyond that required under the contract. If the contract required arbitration of that amount by providing that any dispute respecting the valuation of extra work done be referred to the Builder's Exchange, the right to arbitrate was waived by both parties through the litigation of their rights. (*Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335, 339 [182 P.2d 182].)

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. Obviously the contract is ambiguous. The parties differ in their respective interpretations of it; justices of this court differ among themselves and the majority differ from the trial judge; the whole burden of the controversy is the construction to be placed on the uncertain contract. Perusal of the 946 pages of reporter's transcript, together with the several exhibits, discloses evidence competent and ample in every respect to support the trial court's construction of the ambiguous contract. If we follow the law, the trial court's construction should prevail. (*Edwards* v. *Billow* (1948), 31 Cal.2d 350, 359 [188 P.2d 748]; *Palmtag* v. *Danielson* (1947), 30 Cal.2d 517, 522 [183 P.2d 265]; *Estate of Rule* (1944), 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) The findings, liberally construed to support the judgment, are not in my view inadequate as a matter of law. I would, therefore, affirm the judgment.

Respondents' petition for a rehearing was denied April 11, 1950. Schauer, J., voted for a rehearing.