[Civ. No. 20921. Second Dist., Div. Three. Dec. 8, 1955.]

LLOYD A. FREDERICK, Appellant, v. GEORGE A.
CURTRIGHT et al., Respondents.

William Strong for Appellant.

Sylvester Hoffmann and Stanley Sevilla for Respondents.

SHINN, P. J.—Plaintiff brought this action against defendant Curtright and two corporations to recover the sum of $6,000 allegedly earned as a licensed business opportunity and securities broker for negotiating the sale of certain property of the defendants. To plaintiff's fifth amended complaint a demurrer was sustained without leave to amend; judgment was entered for defendants and plaintiff appeals.

The complaint set out as exhibits three contracts. The first was dated May 8, 1953. It gave plaintiff the exclusive right to sell "stock as listed above, for the 60 day period

from May 8, 1953 to July 8, 1953 and within 30 days thereafter to parties with whom said Broker negotiated during said period, provided said Broker notifies me in writing of said negotiation.'' It provided ''If a sale or exchange is effected during their agency for the above described stock, I agree to pay them 10 per cent of the selling price, as commission for their services, and to furnish satisfactory title to said stock.'' Typed on the face of the writing was ''THIS EXCLUSIVE EXTENDED TO AUGUST 8, 1953.'' Above was written ''Price $60,000, Terms Cash.'' The second agreement was dated September 30, 1953, and was in the form of an offer by Robert A. Rub to defendants, accepted by them, to purchase all stock of the two corporations owned by Curtright ''plus all of the machinery and equipment used in connection with said businesses now owned by GEORGE A. CURTRIGHT. . . . ''[1] The named price was $60,000 of which $25,000 was down payment, $5,000 to be paid within a year plus $1,000 per month or more until paid. It provided ''This purchase and sale agreement is contingent upon the following conditions: 1. An agreement shall be drawn by Axelrod & Sevilla . . . Attorneys at Law, covering the transfer of stock and all assets, patents, beneficial business agreements now in use and owned by CUSTOMCRAFT CHINCHILLA EQUIPMENT CORPORATION and CUSTOMCRAFT INDUSTRIES, INC., and/or GEORGE A. CURTRIGHT. 2. This aforementioned agreement to be drawn by Stanley Sevilla is subject to acceptance by the purchasers on or before October 5, 1953. Furthermore, in the event that the aforementioned Agreement is not approved by the purchaser, it is expressly understood that the One Thousand Dollars ($1,000.00) listed in this agreement will be returned to the purchaser forthwith by the LLOYD A. FREDERICK COMPANY.'' Over the signatures of defendant corporations was the following: ''I hereby agree to pay to LLOYD A. FREDERICK COMPANY as commission ten percent (10%) of the selling price for the sale of the above stock.'' The third agreement was between defendants and Robert A. Rub and Saul Rub; it was signed by them and by defendants October 22, 1953. It was a contract for the sale of other property of the defendants, as hereinafter explained. It contained no provision for the payment of a commission to plaintiff. It was alleged in the earlier complaints, but not in the fifth amended complaint, that the sale was never consummated.

---

[1]The ''stock'' was the stock of Curtright in the two corporations.

It was not alleged in the complaint that plaintiff procured Rub or any other person ready, able and willing to purchase the property within the time specified in the employment agreement nor was it alleged there was any extension of the term of plaintiff's employment. In the absence of such allegations the complaint failed to state a cause of action on the contract of employment. (*Augustine* v. *Trucco*, 124 Cal.App. 2d 229, 237 [268 P.2d 780] ; *Ford* v. *Palisades Corp.*, 101 Cal. App.2d 491, 497 [225 P.2d 545] ; *Lisle* v. *E. B. & A. L. Stone Co.*, 103 Cal.App. 409 [284 P. 680] ; 9 Cal.Jur.2d 256, 267.)

If plaintiff earned a commission it was under the second contract which provided for the payment of a commission for a sale of the property. It was alleged that although the term of the agreement of employment had expired, plaintiff procured Robert A. Rub to purchase the shares of stock and other personal property by the agreement of September 30 and that Rub continued ready, able and willing to purchase in accordance with the October 22d agreement, but that defendants refused to consummate the sale or to pay a commission.

As we have seen, the offer made by Rub September 30th was conditional: It provided for a further agreement to be drawn and accepted by the purchaser by October 5th and it left it optional with him to approve or disapprove the contract when it should be drawn. It was not a firm offer to purchase the property and it did not preclude defendants from stipulating any terms they sought to impose by the agreement which they were to prepare and submit to Rub. It was an agreement to enter into an agreement by October 5th if there should be a meeting of the minds of the parties as to all matters that had not been settled. Inspection of the October 22d agreement discloses that there were many conditions imposed by each of the parties as to which the September 30th agreement was silent. The deferred payments were to bear 6 per cent interest; accounts receivable were to be assigned to the sellers as security; promissory notes were to be given by the sellers to the purchasers in adjustment of income tax liabilities; the purchasers assumed a liability of the corporations to Curtright, to be included in their promissory note; certain other liabilities of the sellers were to be assumed in an amount shown on a balance sheet, and any excess thereof was to be credited on the purchase money note. The agreement referred to schedules of accounts and assets as shown upon certain attached exhibits but the agreement

pleaded had no such exhibits attached and the same were not identified in any manner. An inventory was to be taken of accounts receivable, physical assets and cash which must show a value of not less than 80 per cent of the book value of the inventory; there were certain warranties by the sellers with respect to assets and liabilities and the verity of balance sheets, and a provision for offsets against the purchase price; leases held by the defendants were to be assigned; there were provisions for the purchase of certain accounts receivable and a guarantee of the payment of 95 per cent of the amount of all accounts receivable within 120 days after close of escrow; there was a license to exclusive use of the custom-craft trademark by the purchasers for 10 years with certain exceptions, and also for the use of the corporate names of defendant corporations; the sellers were to cause certain third parties to continue to do business with the purchasers at prices no greater than defendants had been charged; defendants were to refrain for 5 years from engaging in any competing business; defendants were not to induce any employees to leave their employment and Curtright was to assist the purchasers in the business for two weeks, without compensation.

In addition to the mentioned terms and conditions which were not stated in the September 30th agreement, it was alleged in the complaint that by the October 22d agreement defendants agreed to sell and Rub to buy "substantially different assets and personal property belonging to said defendants than those mentioned in the agreement cited hereinabove as Exhibits 'A' and 'B' " (the May 8th and the September 30th agreements). Plaintiff does not mention in what respects the assets and personal property were "substantially different" but it may be noted that the first agreement referred only to corporate stock, the second was for the purchase of stock "plus all of the machinery and equipment used in connection with said businesses now owned by George A. Curtright individually" and the October 22d agreement, as pleaded, did not contain a complete description of the property to which it related.

The contract of September 30th to which plaintiff was not a party was a special contract in that it related solely to the negotiations between defendants and Rub. Plaintiff's claim to compensation depended upon a consummation of a purchase by Rub of the property described in the contract

upon terms and conditions substantially the same as those specified in the agreement. If such a sale was not made the agreement to pay a commission was of no efficacy and created no obligation on the part of defendants. Plaintiff cannot claim that the September 30th contract established that the minds of the parties had met with respect to the property to be sold, the price and terms and conditions of the sale; in fact he does not make that claim. It is clear from the agreement that it was only a memorandum covering the general features of the negotiations and leaving to future arrangement phases of the transaction upon which the parties might or might not agree. They could very well have been in disagreement as to many of the particulars covered by the October 22d agreement. Manifestly, inasmuch as there were numerous terms and conditions left to future agreement plaintiff did not earn a commission even if he brought the parties together and induced them to sign the September 30th agreement. It may not be doubted that if it had been a firm, enforceable agreement a commission would have been earned even if the sellers had wrongfully refused to perform it, but such is not the case. Plaintiff did not produce a buyer ready, able and willing to buy on terms and conditions specified by the seller. In material respects the terms and conditions of a sale were not specified nor agreed to. Plaintiff does not contend that he earned a commission by producing a buyer ready, able and willing to purchase the property described in the September 30th agreement upon the terms and conditions therein stated, yet he relies upon the promise of that agreement to pay him a commission for producing purchasers for property under the October 22d agreement, in which there was no promise to pay a commission. If the property covered by the latter agreement had been the same as that described in the September 30th agreement, and if the terms had been substantially the same, a different question respecting plaintiff's right to a commission would have been presented; but far from alleging that it was the same property it was alleged that the agreement related to "substantially different assets and personal property belonging to said defendants."

It seems self-evident that if an owner by special contract promises to pay a broker a commission for selling property specifically described in the agreement, and if the owner contracts to sell or sells substantially different property to one produced by the broker, a commission has not been earned.

Plaintiff's brief makes no mention of the allegation of the complaint that the property was substantially different from that mentioned in the first and second agreements and he advances no theory under which a broker employed to effect the sale of one property would earn a commission by producing a buyer for entirely different property.

■ It is elementary that in order to earn a commission, a broker must render the service which is the sole consideration for the promise of compensation. (*Backman* v. *Guadalupe Realty Co.*, 78 Cal.App. 347 [248 P. 296].) ■ Since it affirmatively appears from the fifth amended complaint that it could not be further amended to state a cause of action, it was not error to sustain the demurrer without leave to amend.

The judgment is affirmed.

Wood (Parker), J., and Nourse (Paul), J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.