[Civ. No. 21300. First Dist., Div. One. Dec. 16, 1963.]

JACK WILLIAMS, Plaintiff and Appellant, v. UNITED
   CALIFORNIA BANK, as Executor, etc., et al., Defend-
   ants and Respondents.

Harold J. Willis for Plaintiff and Appellant.

Richard F. Swisher for Defendants and Respondents.

BRAY, P. J.—Plaintiff appeals from a judgment, without a jury trial, in favor of defendants in an action for a real estate broker's commission.

## QUESTIONS PRESENTED

1. Was the sale to Island Farms Company under the option set forth in the Nomellini Farms agreement?
2. Should parol evidence have been admitted?

## RECORD

Plaintiff, a real estate broker, filed a complaint against United California Bank, successor to First Western Bank and Trust Company, as executor of the will of Louis Goldenson, deceased,[1] and Irma Goldenson for the recovery of a real estate broker's commission. The first count of the complaint was based upon an agreement dated August 12, 1959, executed between Louis Goldenson (now deceased) and defendant Irma, as lessors, and Nomellini Farms, Inc., a corporation, as lessee.[2] It is alleged that pursuant to that agreement the bank, as executor, and Mrs. Goldenson, sold the property described in the agreement to Island Farms Company, Inc., a corporation (successor in interest to Nomellini Farms) for $241,559.50, and that by reason of such sale defendants bank and Mrs. Goldenson became indebted to plaintiff in the sum of $14,493.57. The second count is for the same commission, based upon an agreement between plaintiff and Louis and Irma Goldenson, executed the same day as the agreement mentioned in the first count. Both agreements will be hereinafter discussed.

In their answer defendants admitted the execution of the two agreements and the sale to Island Farms. However, they denied that the sale was made pursuant to the Nomellini

---

[1] Referred to herein as the bank.

[2] Said agreement will be referred to herein as the Nomellini agreement.

agreement and affirmatively alleged that it was not made in conformity to the option in that agreement.

The court found that the sale was not made "in accordance with the provisions or terms of the option contained in the lease...." and that plaintiff was not the procuring cause of the sale, and that therefore plaintiff was not entitled to any broker's commission. Judgment was entered accordingly.

1. WAS THE SALE UNDER THE OPTION?

There appears to be no dispute as to the facts. The Goldensons owned certain real property on Venice Island in San Joaquin County. They asked plaintiff to help them sell or lease the property. Plaintiff secured as a tenant Nomellini Farms. An agreement was then entered into between the Goldensons and Nomellini Farms, which in addition to providing the terms of the lease, granted the latter an option to purchase. It is the option portion of the agreement which is pertinent here. It reads: "Upon the execution of this lease the Lessee has paid to the Lessors the sum of $5,000.00, the receipt whereof is hereby acknowledged, in consideration for which the Lessors hereby grant to the Lessee the option of purchasing the property hereby leased for a purchase price of $500.00 per acre, said option to remain in effect for a period of five (5) years from and after January 1, 1960. If this option is not exercised in said five year period, thereafter the Lessee shall have the right to have submitted to it any offers made by third persons for the purchase of said premises and the Lessee shall have the right to purchase for such price before the Lessors may sell the property to such third parties.... *In the event the option is exercised hereunder*, the Lessors agree to pay to Jack Williams, the real estate broker who negotiated this lease, a commission equal to 6% of the total sales price for said property as provided for in this option." (Italics added.) On the same day, the Goldensons and plaintiff entered into an agreement, the pertinent portion of which reads: "In connection with that certain Farm Lease dated the *12th* day of August, 1959, between GOLDENSON and NOMELLINI FARMS, INC., it is agreed between the parties hereto *that if the said NOMELLINI FARMS, INC., buys the real property therein described according to the terms of the option therein contained*, or after the expiration of said option. GOLDENSON will pay to WILLIAMS, in cash at the time of said sale, as a commission for the negotiation of said Farm Lease, a commission equal

to 6% of the total sales price of said property." (Italics added.)

Thereafter Island Farms succeeded to the interest of Nomellini Farms in the lease and option.

Plaintiff received no commission of any kind for bringing the Goldensons and Nomellini Farms together and obtaining the agreement.

As nearly as can be determined from the record the following occurred in reference to the sale of the property to Island Farms, Nomellini Farms' successor in interest. Louis Goldenson died October 15, 1959. After the bank became executor of his estate Gerald Otey, Assistant Trust Officer of the bank, representing the bank as executor and Mrs. Goldenson, tried unsuccessfully to get the tenant to exercise the option in the lease at $500 per acre. In a letter to Nomellini, the bank stated, "Some time ago, Mr. Otey talked with Mrs. Goldenson about working out a sale, also discussed the matter with Mr. Jack Williams. The Executors would be willing to sell you the property under a contract with a nominal down payment; purchase price of $500 an acre, as called for in the lease and option, would be subject to negotiation. . . . You have been vague and non-committal as to your interest in trying to work out a sale at this time. We must have something definite as Mrs. Goldenson and the Bank want to sell the property. If you are not interested we plan to offer it elsewhere. It is possible that you are relying entirely upon the option provision. If this is the case, may I point out that it is silent as to the manner of payment and it is my understanding, as a principle of law, that this would mean payment must be made in all cash, at the seller's option. If we sell the property to someone else, you would be at their mercy in this respect, and, if the estate keeps the property, probably such a reasonable manner of purchase as presently proposed would not be made. I would be pleased to discuss this personally with you at a time convenient." Nomellini offered in a letter to purchase at $300 per acre, "Commission at 6% as per the agreement in the lease with option to purchase between Goldenson and Nomellini."

In response to a letter from plaintiff, the bank on May 27, 1960, wrote plaintiff stating that the owners were interested in "trying to work out a satisfactory sale of the property; however, we seem to be dealing with too many people in this connection." Enclosed was a copy of a letter to Mr. Ray Hommes, a stockholder of Island Farms. It stated: "I am

pleased to note that you have suggested to Mr. Nomellini that he contact us for the purpose of setting up an appointment to sit down and discuss the possibilities of consummating a deal. We have received a letter from Mr. Jack Williams, a real estate broker, submitting an offer upon behalf of Mr. Nomellini at $300 per acre. There are too many people to deal with. I might add that the offer is too low, probably subject to negotiation. I would like the opportunity of discussing this with you and Mr. Nomellini in person and would welcome your suggestions.''

Thereafter the bank and Mrs. Goldenson sold the property to Island Farms for $350 per acre. It was stipulated that for the purposes of this case, the sale could be considered the same as if made to Nomellini Farms.

Although the sale was made to the assignee of the optionee, it was for a different sum and on different terms than those mentioned in the option. The option provided a price of $500 per acre, while the sale was for $350. The option, being silent on the terms of sale, is presumed to provide for payment in cash. The sale was made on terms.

Plaintiff's claim to commission must rise or fall upon the terms of the agreements. ■ ''The right of a broker to recover his commission must be measured primarily by the terms of his employment. [Citation.] ■ The broker may, by special agreement, make his compensation depend upon a contingency or the happening of a condition precedent, and unless such contingency occurs, he has no right of recovery.'' (*Denbo* v. *Weston Investment Co.* (1952) 112 Cal. App.2d 153, 157 [245 P.2d 650].) ■ ''It is a general rule that a broker employed to find a purchaser for, or to sell, property, is not entitled to compensation where he merely procured a third party to take an option on the property, and the option is not exercised.'' (23 A.L.R. 856; *California Land Security Co.* v. *Ritchie* (1919) 40 Cal.App. 246 [180 P. 625].) Under the agreements in our case, plaintiff made his compensation depend upon the exercise of the option, and not merely upon a sale.

■ The language of the lease-option agreement is clear. ''In the event the option is exercised *hereunder*, the Lessors agree to pay Jack Williams ... a commission equal to 6% of the *total sales price for said property as provided for in this option*.'' (Italics added.) No reasonable construction is possible except that Williams was to receive his commission on the exercise of the option at $500 per acre. The words ''as

provided for in this option" must refer to the price term, both logically and grammatically. Thus, as the option was exercised for less than $500 per acre no commission accrues by the terms of the instrument.

Likewise the language of the contract between Goldensons and plaintiff is clear. "... if said NOMELLINI FARMS, INC., buys the real property therein described *according to the terms of the option therein contained ...*" Goldenson agreed to pay a commission of 6 per cent of the sales price. The option clause provides for sale within five years at $500 per acre. The option was not exercised "according to ... [its] terms."

█ "An owner is entitled, however, to make a special contract with the broker whereby the latter is required to procure a purchaser willing to pay a particular price or meet specific conditions imposed by the owner. In such cases, if the owner sells the property to a purchaser procured by the broker, but on different terms from those stated in the contract, the broker is not entitled to a commission in the absence of bad faith." (*Palmtag* v. *Danielson* (1947) 30 Cal.2d 517, 521 [183 P.2d 265]; accord: 43 A.L.R. 1111; 9 Cal.Jur.2d, Brokers, § 93, pp. 261-262, § 96, p. 269; *Backman* v. *Guadalupe Realty Co.* (1926) 78 Cal.App. 347 [248 P. 296] ; *Brown* v. *Mason* (1909) 155 Cal. 155 [99 P. 867, 21 L.R.A. N.S. 328].)

The sale of the land was made at a figure more than $100,000 less than that specified in the option. The sale was made on terms, rather than in cash as arguably was required by the option. There is no contention of bad faith. There was testimony by Nomellini in the record that the land in question at the time of the lease was in poor condition, and would only be worth $500 per acre if Nomellini worked the land for the term provided in the lease. Hence it cannot be said that the reason the option was not exercised in accordance with its terms was to prevent the broker from getting a commission. The court would not be justified, under the circumstances here, in order to protect the broker's commission, to find that the option had been exercised. The court found that the parties to the sale acted in good faith.

Plaintiff cites 46 American Law Reports 2d 848, and other authorities to the effect that where real property is placed in the hands of a broker for sale or lease, and a sale or lease is brought about through him as a procuring cause, he is entitled to a commission on the sale or lease even though the

final negotiations are conducted through the owner, who, in order to make a sale or lease, accepts a price less than that stipulated to the owner. That principle is not applicable where, as here, an option to purchase is given, and the broker's right to a commission is by the agreement of the parties expressly made contingent upon the sale being made for a specified price. In such event, the broker must show that the sale was made for the price specified. As the sale here was not made either for the price specified nor upon the terms implied, plaintiff may not recover.

2. PAROL EVIDENCE.

■ Plaintiff Williams sought to introduce evidence as to the meaning of the provisions relating to his commission. This was excluded by the trial court as a violation of the parol evidence rule. The provisions are clear upon their face. Plaintiff has not shown any way in which the provisions are ambiguous. The only purpose of the evidence sought to be introduced was to alter the plain meaning of the provisions. The evidence proffered was properly excluded. (See Code Civ. Proc., § 1856; Civ. Code, § 1625; McBaine, California Evidence Manual (2d ed.) § 1175, p. 416; § 1132, p. 389; cf. §§ 1172-1173, pp. 407, 411; *Parker* v. *Meneley* (1951) 106 Cal.App.2d 391, 399 [235 P.2d 101].)

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1964.