[Civ. No. 30810. Second Dist., Div. Two. Nov. 30, 1967.]

WM. E. DOUD & CO., INC., et al., Plaintiffs and Appellants, v. MARTIN V. SMITH et al., Defendants and Respondents.

Rich & Ezer and Mitchel J. Ezer for Plaintiffs and Appellants.

Henry A. Fox for Defendants and Respondents.

FOX, J.*—This is an action to recover a real estate commission. Defendants' demurrer was sustained to counts II, III and IV of the second amended complaint without leave to amend.[1] Plaintiffs[2] have appealed from the ensuing judgment of dismissal.

In the second cause of action it is alleged that Smith and Siegel were the owners of a large tract of unimproved land in Ventura County suitable for subdivision. They indicated to plaintiffs their desire to sell this property, but refused to give plaintiffs a general brokers listing, stating that the price and terms at which they would sell the property would depend on the financial strength of the prospective purchasers and their experience as subdivision developers. It was orally agreed that if plaintiffs located a prospective purchaser satisfactory to Smith and Siegel and negotiations were entered into, Smith and Siegel would issue a written memorandum to plaintiffs acknowledging the beginning of such negotiations and agreeing to pay plaintiffs, upon consummation of a sale of the property to such prospective purchasers, a commission.

Plaintiffs obtained expressions of interest in the purchase of this property from Mark Kornwasser, and Byron Lasky representing the firm of Kaufman and Broad. On July 28, 1964, Smith and Siegel provided plaintiffs with a writing[3]

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Other counts were abandoned by plaintiffs.

[2]Plaintiff John J. Phillips had previously dismissed the action as to all defendants.

[3]The writing in question reads as follows:
 "July 28, 1964
Mr. John J. Phillips
22 Esteban Drive
Camarillo, California
Dear Mr. Phillips:
 "As brokers, you and the Wm. E. Doud Company Realtors, have brought Kaufman and Broad and an individual named Mark Kornwasser into negotiations regarding Tract Nos. 1527 and 1646, as well as the approximately forty (40) acres, zoned RPD-10, lying immediately south of Tract 1646. This is to advise you that if the lots which make up Tracts 1527 and 1646 are sold to either of these buyers, the commission to be paid to you and the Wm. E. Doud Company, co-brokers, will amount to $200.00 per lot whether the lots are sold as unfinished or finished lots, at $3400.00 per lot, or the excess above $3200.00 per lot, whichever is the lesser amount.
 "If the land is sold on an acreage basis rather than on a lot basis, your commission will be five (5%) per cent of the selling price.
 "The commission of five per cent of the selling price will also apply to the above named forty acres zoned RPD-10.
 "Very truly yours,
 /s/ Martin V. Smith
 MARTIN V. SMITH."

acknowledging that plaintiffs had brought Kaufman and Broad and an individual, Mark Kornwasser, into negotiations with defendants and agreeing to pay certain commissions to plaintiffs if the property was sold to either of these prospective buyers.

At some time during August or September 1964, Byron Lasky ceased the representation of Kaufman and Broad, and thereafter he and Harlan Lee agreed to purchase the property from Smith and Siegel. On or about November 10, 1964, Smith and Siegel sold the land to Lasky and Lee. Plaintiffs' second cause of action is based on this agreement—quoted in footnote 3.

In their third cause of action plaintiffs alleged that Smith and Siegel did not furnish them with a writing acknowledging that plaintiffs had brought Lasky into negotiations with them for the purchase of the property and agreeing that plaintiffs would be entitled to a commission upon the sale of it to Lasky and Lee; that as a result plaintiffs are without a writing which evidences their right to commissions on a sale to Lasky. Plaintiffs further allege that they and defendants had an oral agreement that plaintiffs would be entitled to the commission if the land was sold to any buyers produced by plaintiffs. They therefore demand payment of the commission based upon Smith and Siegel's failure to pay the commission due pursuant to the alleged oral agreement.

The fourth cause of action is on the theory of *quantum meruit* for work and labor performed by plaintiffs.

In *Denbo* v. *Weston Inv. Co.*, 112 Cal.App.2d 153, the court stated at page 157 [245 P.2d 650] these established principles: "The right of a broker to recover his commission must be measured primarily by the terms of his employment [citation]. The broker may, by special agreement, make his compensation depend upon a contingency or the happening of a condition precedent, and unless such contingency occurs, he has no right of recovery. [Citations.]" (Quoted in *Williams* v. *United Cal. Bank,* 223 Cal.App.2d 309, 313 [35 Cal.Rptr. 788].)

In passing upon the sufficiency of the allegations in count II to state a cause of action we must bear in mind the distinction between a general and special contract of employment of a real estate broker when it comes to the performance which will entitle him to a commission. This distinction is well stated in *Denbo* v. *Weston Inv. Co., supra.* At page 158 the court pointed out that the general rule is that a broker

performs his part of a general contract of employment when he produces a purchaser able, ready, and willing to buy upon the terms specified by the owner. The court then quoted from *Backman* v. *Guadalupe Realty Co.*, 78 Cal.App. 347, at page 352 [248 P. 296] : " '. . . Upon a *general* (italics added) contract of employment, certainly, the owner may make concessions to a purchaser without loss of the commission to the broker, but there is a distinction in fact recognized by the authorities, between a general and special contract of employment in a matter of this kind. It appears that where the broker has undertaken a *special* (italics added) task by his contract of employment and fails to perform it, the fact of having first introduced the buyer and seller will not entitle him to recover. . . .' "

This quotation from *Backman* is again quoted in the later case of *Ridgway* v. *Chase*, 122 Cal.App.2d 840, at page 851 [265 P.2d 603].

 Applying these principles to the writing in the instant case (fn. 3) it is apparent from the face of the document that it is a special and not a general contract of employment for it clearly provides for the payment of a compensation upon the sale of the property in question "to either of these buyers"; viz., "Kaufman and Broad and an individual named Mark Kornwasser." Furthermore, plaintiffs do not allege in their pleading that this writing constitutes a general employment. They allege in their second amended complaint that ". . . the parties agreed that Smith and Siegel would not give plaintiffs a general brokers listing. . . ."

The second count of the amended complaint shows on its face that the property in question was not sold to either Kaufman and Broad or to Mark Kornwasser. This count therefore does not state a cause of action for recovery of a realtor's commission. (*Denbo* v. *Weston Inv. Co.*, 112 Cal. App.2d 153 [245 P.2d 650] ; *Ridgway* v. *Chase, supra,* 122 Cal.App.2d 840; *Williams* v. *United Cal.Bank, supra,* 223 Cal.App.2d 309; *Augustine* v. *Trucco,* 124 Cal.App.2d 229, 237 [268 P.2d 780] ; *Backman* v. *Guadalupe Realty Co., supra,* 78 Cal.App. 347.)

Plaintiffs' reliance on *Needham* v. *Abbot Kinney Co.*, 217 Cal. 72, 74 [17 P.2d 109], is misplaced. In that case the last paragraph of the listing agreement stated: "In any deal satisfactory to us we would expect to pay the usual Realty Board Commission." The court found, in effect, that this language amounted to a general listing agreement, and autho-

rized the broker to negotiate with parties other than those named in the letter for any deal satisfactory to the owner. There is no comparable language in the writing on which plaintiffs rely.

Plaintiffs' reliance on *Porter* v. *Cirod, Inc.*, 242 Cal.App.2d 761 [51 Cal.Rptr. 784], is also misplaced. Civil Code, section 1624, subdivision 5 and Code of Civil Procedure, section 1973, subdivision 5, were each amended in 1963[4] to require a broker who is employed to "find a purchaser . . . of real estate" to have authority in writing therefor in order to collect a commission.

Plaintiffs vainly seek to enlarge the scope of the listing agreement by alleging that "it was intended by Smith and Siegel in delivering the memorandum and plaintiffs in accepting it that the reference to Kaufman & Broad was intended to cover personnel affiliated with Kaufman & Broad, specifically including Lasky, in whatever capacity such personnel might act."

Plaintiffs cannot escape the plain meaning of the language used in the writing by alleging that they intended to include persons other than those named in the agreement by virtue of a prior oral agreement. More explicit language could hardly have been used to state that plaintiffs' commission would become due only upon a sale to Kaufman and Broad or to Mark Kornwasser.

Apposite here is the decision of the court in *Beazell* v. *Schrader*, 59 Cal.2d 577 [30 Cal.Rptr. 534, 381 P.2d 390]. This was also an attempt to collect a real estate commission. At pages 581-582 the court stated: ". . . Without question if plaintiff is permitted to establish a different agreement than that evidenced by the escrow instructions his purpose and the effect of such a showing would be to vary and contradict the terms of the document which he urges as a sufficient memorandum, or to show a different contract than that to which such memorandum relates.

" . . . . . . . . . . . . .

" ' . . . It is not permissible for the broker to resort to the escrow document for a ratification of his employment and then, in contradiction of the other provisions thereof, establish by parol a different contract as to the conditions under which the commission is to become due. To permit such a course

---

[4]This amendment was subsequent to the transaction involved in *Porter*, and prior to the transaction at bench.

would be to defeat the very object the statute of frauds was designed to accomplish.' [Citations.]' '

In *Waverly Productions, Inc.* v. *RKO General, Inc.*, 217 Cal.App.2d 721, at page 729 [32 Cal.Rptr. 73], the court stated: ''Out of all the qualifications and uncertainties of the parol evidence rule one proposition emerges clear and decisive, namely, that the exclusionary rule is applicable 'where the *intention* of the parties with respect to their obligations and rights is clearly stated in the writing, and parol evidence of a *contrary intention* is offered.' (Witkin, California Evidence, § 374, p. 417.)' '

In *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, the court stated at page 133 [48 P.2d 13] : ''Other statements of similar character were admitted. Together they amount to nothing more than a statement of what Carver personally believed the agreement of the parties to be. But it is now a settled principle of the law of contract that the undisclosed intentions of the parties are, in the absence of mistake, fraud, etc., immaterial; and that the outward manifestation or expression of assent is controlling. This is the 'objective' standard, established by the modern decisions and approved by authoritative writers. . . . As the court said in *Payne* v. *Commercial Nat. Bank*, 177 Cal. 68, 72 [169 P. 1007, L.R.A. 1918C 328] : '. . . no authority sustains the proposition that under the guise of construction or explanation, a meaning can be given to the instrument which is not to be found in the instrument itself, but is based entirely upon direct evidence of intention independent of the instrument.' [Citations.]' '

*Imbach* v. *Schultz*, 58 Cal.2d 858, 860-861 [27 Cal. Rptr. 160, 377 P.2d 272] : ''Although parol evidence is ordinarily admissible to explain the meaning of an agreement, it is not admissible when it is offered, as here, to give the terms of the agreement a meaning to which they are not reasonably susceptible, and this is especially true where the evidence consists of a declaration of a party as to what he intended the language of the specific document to mean. [Citations.]' '

From these authorities it is clear that in construing a contract which purports on its face to be the complete expression of the entire agreement between the parties, courts will not add another item about which the agreement is silent. Parol evidence will not be admitted to enlarge or modify that which the writing specifies. Here, the writing specifically authorized the payment of a commission to plaintiffs in the event that the property in question was sold to Kaufman

and Broad or Mark Kornwasser. There is nothing in the writing to suggest that it was intended to cover personnel affiliated with Kaufman and Broad. This attempt to enlarge the scope of the agreement must, under the decisions, fail.

Plaintiffs' third cause of action is an attempt to recover their real estate commissions on an oral contract. The statute of frauds bars any recovery upon that cause of action. (Code Civ. Proc., § 1972, subd. 5; Civ. Code, § 1624, subd. 5; *Augustine* v. *Trucco, supra,* 124 Cal.App.2d 229; *Kraemer* v. *Smith,* 179 Cal.App.2d 52 [3 Cal.Rptr. 471]; *King* v. *Tilden Park Estates,* 156 Cal.App.2d 824 [320 P.2d 109].) In *Kraemer,* the court stated at page 55: ''A real estate broker as a professional man, is presumed to know that contracts for real estate commissions are unenforceable unless in writing. He assumes the risk of relying on oral promises and has no reason to complain if his efforts are unrewarded. [Citation.] . . .''

Plaintiffs seek to recover on their fourth cause of action on the theory of *quantum meruit.* In *Ford* v. *Palisades Corp.,* 101 Cal.App.2d 491, 498 [225 P.2d 545], the court pointed out that where an agreement to pay a broker's commission is unenforceable because of the statute of frauds, he cannot recover the reasonable value of time and money laid out under the agreement. In *Beazell* v. *Schrader,* 59 Cal.2d 577, a cause of action was alleged in *quantum meruit,* and the court stated on page 582 [30 Cal.Rptr. 534, 381 P.2d 390]: ''The complaint alleges a second cause of action in *quantum meruit* for the reasonable value of plaintiff's services in effecting the sale of defendant's property. This cause of action is also barred by the statute of frauds.''

In this connection it is appropriate to note that where one cause of action is based upon a written contract and a demurrer is sustained to such a count without leave to amend, it is proper to sustain a demurrer to a common count pleaded as an additional cause of action which is based on the same set of facts that are pleaded in the count on the written contract. (*Fruns* v. *Albertsworth,* 71 Cal.App.2d 318, 321 [162 P.2d 666].) In *Jamison* v. *Hyde,* 141 Cal. 109, the court stated at page 113 [74 P. 695]: ''There being no contract of employment in writing, it is clear also that plaintiff is not entitled to recover the reasonable value of services under the second count of his complaint. This question has long been settled by the decisions of this court. . . .''

The judgment is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.