370 P.2d 767

Louis J. McALISTER and Lorene E. McAlister, his wife, Appellants,

v.

C. T. COOPER d/b/a Cactus Realty, Appellee.

No. 6815.

Supreme Court of Arizona, In Division.

April 18, 1962.

Books, Malsh & Silverstone, Tucson, for appellants.

Walter M. Stevenson, Tucson, for appellee.

PORTER MURRY, Superior Court Judge.

This is an appeal by the defendants from a directed verdict granted the plaintiff in an action by C. T. Cooper d/b/a Cactus Realty, a real estate broker, to recover a commission alleged to be due him from Louis J. and Lorene E. McAlister, husband and wife, vendors of certain real property. The parties will be referred to as they appeared in the trial court.

In October of 1957, defendants as owners of certain real property in Tucson, Arizona, telephoned plaintiff broker expressing their desire to sell. On October 18, plaintiff showed the house to Mr. and Mrs. Santoro hereinafter called the buyers who liked the house and expressed a desire to buy it. An offer was submitted to the defendants in the form of a preliminary sales agreement signed by the buyers and labeled "Deposit Receipt and Agreement". This agreement was on a printed form and had been filled out by the plaintiff or his agent, a Mr. Towler; they then took the offer to the home of the defendants. Defendants rejected the offer and a discussion followed between plaintiff and defendants concerning the purchase price of the house. The "Deposit Receipt and Agreement" was changed by striking the purchase price of $11,500 and substituting the price of $12,500. The alteration was initialed by defendant Louis J. McAlister with the initials L. J. M. and then both defendants signed the instrument. The buyers later initialed the price change on the preliminary sales agreement. The next day plaintiff called defendants to his office to complete the transaction but defendants refused to sign and thereafter refused to deliver title to the property. Suit was then brought by the plaintiff for his commission. This portion of the facts is not in dispute.

During the course of the trial four copies of the "Deposit Receipt and Agreement" were admitted into evidence marked plaintiff's exhibits 1, 2, and 3 and defendants' exhibit A. It is with these exhibits that we are concerned. They were initially all identical, in fact they were an original and three copies, but when admitted into evidence no two of them were alike. Plaintiff's exhibit 1 had typed on the back of the instrument: "$660 commission to be paid to Cactus Realty on the property located at 1528 N. Rosemont, City of Tucson, County of Pima, State of Arizona." It was signed there-

under: "Cactus Realty by C. T. Cooper." This is the only one of the four exhibits which has this phrasing typed on the back. Plaintiff's exhibit 2 has "$660 Commission to be paid to Cactus Realty Co." typed on the front of the instrument. Plaintiff's exhibit 3 and defendants' exhibit A do not contain this provision. In addition all exhibits say: "to pay agent a Commission of 6%." which would be $750. Plaintiff's exhibits 1, 2, and 3 contain the clause: "Seller to install a fifty-five c f m Cooler *with Pump* and also put pea gravel on driveway. All utilities to be installed and in working condition." Defendants' exhibit A contains the phrase "Seller to install a fifty-five c f m Cooler and also put pea gravel on driveway. All utilities to be installed and in working condition."

Since no two of the exhibits were the same at the time of trial and since all four exhibits were signed by all the parties, the question arises whether all or any of the alterations were made after the signatures were attached and if so by whom. Defendants testified that neither the typing on the back of plaintiff's exhibit 1 nor the words "$660 commission to be paid to Cactus Realty Co." on the face of plaintiff's exhibit 2 were there when they signed or initialed the instruments. Plaintiff agreed, saying that the change was made the next morning at his direction. The defendants further testified that they agreed orally with plain-

tiff for a commission fee of $500 to be paid upon the close of the transaction.

The plaintiff denied that the sum of $500 was ever mentioned as the commission on the sale but says that the defendants agreed to take $12,500 for the property if plaintiff would take $660 for his commission, and that the commission of $660 was agreeable to both parties. All the parties testified that this discussion occurred at the home of defendants before they had signed but after the signatures of the buyers had been obtained. It is also clear from the testimony of both plaintiff and defendants that neither intended the commission to be 6% or $750 at the time the instrument was initialed and signed by defendants, even though such a figure remained in the instrument. Plaintiff even testified that it was because there was no agreement for 6% that he typed in the $660 the following day.

Upon this state of facts the plaintiff at the end of his case moved for a directed verdict which was taken under advisement by the court until the close of the case. It was then reoffered and granted by the court. A judgment was entered thereon in the amount of $660 and costs.

On the basis of these facts we must hold that the trial court was in error in giving a directed verdict for plaintiff in the amount of $660 or in any other amount. Our statute of frauds, A.R.S. § 44–101, states that a broker of real property may

**194**

not bring an action for his commission unless there exists a written memorandum of his employment to purchase the property, which memorandum must be signed by the party to be charged.[1] We have considered this to mean that the memorandum on which the action is based must contain the terms and conditions of the promise sought to be enforced. Durham v. Dodd, 79 Ariz. 168, 285 P.2d 747.

■ The only writing signed by the parties was a printed form on which was typed in a 6% commission. Both parties testified that when the purchase agreement was signed it was agreed that there would not be a commission of 6%. The trial court took the view that the written contract signed by the parties could not be altered by parol evidence. In this instance, however, the parol evidence rule has no application and clearly the trial court was in error. The signatures to the printed contract are simply the manifestation that the parties agreed to the terms thereof. Where both parties presently agree that one of the terms was not their contract, there has been no assent to the writing as a complete and accurate integration and the parol evidence rule has no application. 3 Corbin on Contracts § 573 (1960). Either the two parties to the transaction mutually assented to the writing as the complete and accurate expression of their contract, or they did not. Here, the evidence is without conflict; they did not.

As to the alleged commissions of $660 and $500 there exists no written memoranda signed by the party to be charged. The only memorandum of a $660 commission was signed by the broker alone and not by the seller who is the party to be charged, and there is no memorandum at all regarding a $500 commission. The statute is absolute in its requirement that no action can be brought for a commission unless the agreement is in writing signed by the party to be charged.

On the basis of the facts before us plaintiff could not successfully maintain the action on the signed contract because neither party's intentions insofar as a real estate commission is concerned were embodied therein. Since there is no memorandum of any other agreement signed by the party to be charged, the plaintiff's action fails. The trial court is instructed to vacate the judgment in favor of plaintiff and enter judgment for defendants.

Judgment reversed.

STRUCKMEYER and JENNINGS, JJ., concur.

---

1. A.R.S. § 44–101 says: "No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some persons by him thereunto lawfully authorized: * * * 7. Upon an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission."