[L. A. No. 11645. In Bank.—December 23, 1932.]

PAUL A. NEEDHAM, Respondent, v. ABBOT KINNEY COMPANY (a Corporation), Appellant.

Asa V. Call, R. C. Gortner, Call & Murphey, Walter E. Bennett and Frank M. Gunter for Appellant.

Arthur G. Baker and Joseph Hansen for Respondent.

THE COURT.—A rehearing was granted in this case after decision by this court in bank. Upon further consideration we are satisfied that the former opinion delivered by Mr. Justice Preston correctly disposes of the issues, and we therefore adopt it as the opinion of the court.

It reads as follows:

"Appeal from judgment for plaintiff, a real estate broker, in an action to recover a reasonable compensation for services rendered to defendant corporation in connection with the disposition of some of its properties.

"The trial court found that on August 19, 1925, defendant executed a writing whereby it employed and authorized plaintiff as its broker and agent, to negotiate for and consummate any deal satisfactory to it with respect to any or all of its properties, including the premises here involved, and agreed to pay him the regular realty board commission, that is, a reasonable compensation, for his services; that plaintiff immediately commenced performance thereunder and about

September 24, 1925, presented to defendant the two real estate brokers comprising the copartnership of Oliver and Carver, who were ready, willing and able to make a deal for said lands and who, as a result of plaintiff's efforts entered into a written contract with defendant about July 1, 1926, in a deal for the subdivision and sale thereof, for the gross principal selling price of $1,182,800, said deal being satisfactory to defendant; that Oliver and Carver thereafter made sales of lots in said subdivision, aggregating the principal sum of $420,300; that the agreed and reasonable commission and compensation to be paid by defendant to plaintiff was 5 per cent of said $420,300, or $21,015, with interest at 7 per cent figured on five per cent of the amount of each respective sale as of the date thereof, said interest then amounting to $3,309.25. Judgment was thereafter entered for plaintiff in accordance with these findings and defendant appealed.

"The above-mentioned written authorization executed by appellant to respondent reads:

" 'Venice, California, August 19, 1925.

" 'Mr. Paul A. Needham, Los Angeles, California.

" 'Dear Sir: The properties owned by the Abbot Kinney Company are not on the market, and are not for sale. However, in consideration of the overtures you have made and the representation that you believe Mr. Adolp Ramish, Mr. Leo Harvey and Mr. Joshua Marks may be interested in considering the purchase of some of our holdings, we would be willing to allow them to enter into negotiations looking toward a deal.

" 'In any deal satisfactory to us we would expect to pay the usual Realty Board Commission.

" 'Yours very truly,

" 'ABBOT KINNEY COMPANY.

" ' (Sgd.) THORNTON KINNEY President.'

"Respondent did not consummate any deal with Mr. Ramish and his associates, but instead introduced Oliver and Carver to appellant as prospective purchasers. After prolonged negotiations, during which the latter made various offers to purchase, ranging from about $485,000 to $600,000, it became apparent that satisfactory terms could not be agreed upon and hence no sale resulted. However, on Feb-

ruary 4, 1926, these parties did execute a contract whereby Oliver and Carver agreed to take over the subdivision and selling agency for some of appellant's holdings. Respondent had followed the course of their negotiations and after the signing of said contract, he demanded his commission. Later, and on July 1, 1926, a new and satisfactory agency agreement, in place of that of February 4th, was made, pursuant to which Oliver and Carver actually took over the subdivision and made sales of lots therein aggregating approximately $420,300, 5 per cent of which sum was awarded by the trial court to respondent as his reasonable compensation as aforesaid.

"The agreement of July 1st was withheld from record and its contents concealed from respondent until time of trial, which necessitated the filing by him of a second amendment to his original complaint, containing allegations conforming to proof and stating a cause of action for a reasonable compensation based upon said satisfactory consummation of the negotiations between the parties. The court found all these allegations, not inconsistent with its other findings, to be true and permitted recovery thereunder.

██ "It is appellant's contention that the above-quoted letter authorized respondent to negotiate a deal only with the proposed purchasers therein named; that it did not employ him to render other services or to find or deal with other agents or subdividers, and that it was insufficient under the statute of frauds. We concur in the view adopted by the trial court that by the last paragraph of said writing, to-wit: 'In *any deal* satisfactory to us we would expect to pay the usual realty board commission', authority was intended to be and was conferred upon respondent to negotiate with other parties for any deal satisfactory to appellant with respect to any or all of its properties and to receive a usual or reasonable compensation for his services; also that the writing satisfied the said statute (sec. 1624, subds. 5 and 6, Civ. Code, as it read prior to the 1931 amendment), which required agreements, or some note or memorandum thereof, for the 'leasing', 'sale' or 'authorizing or employing an agent or broker to purchase or sell' real property, to be in writing and subscribed by the party to be charged or his agent.

■ "Appellant claims that the authorization was insufficient under the statute because it failed to describe precisely the properties involved. However, it did specifically cover 'the properties owned by the Abbot Kinney Company' and this language, together with the remainder of the letter, was sufficient to confer upon respondent a general power to negotiate a deal with respect to any or all of the holdings of said company. The rule in this respect is well stated in *Pray* v. *Anthony*, 96 Cal. App. 772 [274 Pac. 1024, 1026], as follows: ' . . . the essential part of a contract to employ a real estate broker, so far as the statute of frauds is concerned, is the matter of the employment and consequently need not describe the land specifically, if the terms of the employment can be made definite without it. . . . The well established rule is, therefore, that broker's contracts are not to be declared void merely because of a defect, uncertainty, or ambiguity in the description of the property to be sold, when such defect can be cured by allegations and proof of extrinsic facts or circumstances. . . . ' See, also, many cases cited in support of this holding.

"A brief review of some of the evidence favorable to respondent follows: Respondent testified that Mr. Carleton, appellant's auditor and business manager, approached him in August, 1925, with respect to developing or disposing of appellant's properties; that thereafter he spent much time studying its holdings and prepared a detailed written report thereof for Mr. Kinney, appellant's president; that he first submitted the properties to Ramish and associates; that later, to satisfy them upon the question of what financial returns could be gotten from certain lots as a subdivision, he asked Oliver and Carver to report thereon; that the latter firm became so enthusiastic about the subdivision that they wanted it for themselves and he therefore introduced them both to Mr. Kinney and Mr. Carleton for the purpose of opening negotiations looking toward their purchase of the property instead of negotiating further with the Ramish people. Prior to this time, however, he stated he had asked Mr. Kinney for a letter of authorization, including an expression that he would receive the realty board commission in any deal that was satisfactory to appellant, whereupon Mr. Kinney had dictated said letter of August 19th. He testified that he had suggested that the understanding

would be much clearer if the last clause were worded to say that 'in this or any other deal with these or any other parties', appellant would expect to pay said usual commission, but Mr. Kinney had answered that that was rather involved and he felt the simpler expression would be more easily understood, and that respondent could be sure that if he made any deal, they would want to pay him his commission. Respondent further testified that during all of September he negotiated with Oliver and Carver; that later they raised their offer to $600,000, which was the price set by appellant but, the terms being unsatisfactory, the result of all the negotiations was the agency contract finally executed by these parties. He stated that Mr. Kinney assured him that everything was going nicely and that some memorandum of his commission would be entered in the papers by his attorneys; that later one of the attorneys asked him to call, stating that they were ready to sign up; that Mr. Kinney felt morally obligated to pay him a commission and had authorized them to offer $500, which offer, of course, was not acceptable.

"Mr. Kinney testified that prior to August 19, 1925, he discussed with respondent the sale of all appellant's properties; that they later talked of a sale of the particular property here involved and on August 19th he gave respondent the above letter; that shortly thereafter respondent reported that he could not make a deal with the Ramish people and would like to try someone else, mentioning Oliver and Carver, and asking for a more specific letter than that of August 19th to protect him in the matter of his compensation. Mr. Kinney further testified that he then 'kind of stalled it along . . . told him he would not need any letter if he made a sale to them, we would protect him and give him a commission. . . . ' He stated that after appellant entered into the contract with Oliver and Carver he again discussed with respondent the matter of his commission and of having another letter.

"Mr. Carleton gave testimony of a like tenor. He stated: 'I remember after I came back he (respondent) spoke of his commission on a basis of $600,000 in case a sale was consummated and he asked me what it would be, and I said it would be 5% of the sale price.' He further testified that Mr. Kinney was present at that conversation; that 'I remember

Mr. Kinney figuring that after paying $30,000 we would have a $570,000 note'. Quoting further from the record: 'Q. Now going back to the time of the letter of August 19, the writing of that, Mr. Carlton, was anything said there limiting Mr. Needham in any way to the particular associates that were named in there, Ramish and Marks and Harvey? . . . A. No, I remember Mr. Needham saying that he had some other people . . . in the event that Mr. Marks and Mr. Ramish did not go through with the deal. Q. Did Mr. Needham make that remark that he had some other people besides these associates before or after the letter was written? . . . A. Why it was during the time, it must have been before the letter, because he said he was negotiating with these people and had been prior to this letter, and he also mentioned that he had other people in mind. Q. Besides Ramish and his associates? A. Yes, besides Ramish and his associates. . . . '

"Mr. Carver, of Oliver and Carver, testified that respondent first approached him relative to the subdivision and he offered $485,000, making a deposit thereon by a $500 check, but that it seemed after some time that a direct purchase could not be made and they let appellant know they would be interested in obtaining the sales agency for the property; that the subject of respondent's commission was discussed in his presence several times, appellant figuring that a sale on a basis of $600,000 for the property would net them $570,000; that Mr. Kinney wanted to know if any commission would be due respondent if the property should not be sold and Oliver and Carver were merely a sales agency; that they said there was no realty board ruling—they did not know, but felt that perhaps some commission would be due, whereupon Mr. Kinney said he felt also that some compensation was due respondent for the work he had done. Testimony was later adduced to the effect that the realty board recognized the right of a procuring agent to compensation where the owner had been benefited by his own choice of a change from the original deal as presented by the agent and that the percentage upon which respondent's compensation was finally figured was fair and reasonable.

"From the above and other evidence it is clear that appellant did not intend, by said letter, to limit respondent's authorization. Furthermore, although no mention has been

made of the point and we are not here determining it, the evidence to our minds would have opened the door for respondent to present the contention that appellant was estopped to assert the statute of frauds by reason of its assurances to him that the writing was sufficient and that his compensation would be provided for. ▮ It has long been the rule that a person will be held estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud. See a discussion of this subject in *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154], *Zellner* v. *Wassman,* 184 Cal. 80, 85 [193 Pac. 84], and *Keller* v. *Gerber,* 49 Cal. App. 515, 522 [193 Pac. 809].

"We may also add that it is clear from the above and other evidence on the subject not here reviewed that the sum awarded respondent, based on actual sales made under said Oliver and Carver contract, was both fair and reasonable and that the land sold through Oliver and Carver was within the subject matter of the authorization granted to respondent, which contemplated any satisfactory deal with respect to any or all of appellant's properties, as aforesaid. That the deal made was entirely satisfactory to appellant, Mr. Kinney himself admitted, saying: 'The contract that we signed, sure, was satisfactory to us; otherwise we would not have signed it.'

"No other questions merit discussion. We are thoroughly in accord with the action of the court below in this cause and find in the record no prejudicial error."

The judgment is affirmed.