285 P.2d 747

Millard M. DURHAM and Irma Jane Durham, his wife, Appellants,

v.

Grover C. DODD, Appellee.

No. 5912.

Supreme Court of Arizona.

July 5, 1955.

Hall, Catlin & Molloy, Tucson, for appellants.

McCarty & Chandler, Tucson, for appellee.

WINDES, Justice.

Action by Grover C. Dodd against Millard M. Durham and his wife, Irma Jane Durham. The parties will be designated herein as they appear in the trial court.

The plaintiff and defendant Millard Durham purchased a lumber mill and timber in California and were operating the mill under the firm name of Bodega Bay Woods Product Co. The litigation before us resulted from alleged dealings concerning this operation.

The complaint is in two counts, one for specific performance of an alleged contract to sell to the plaintiff real property designated as the Speedway frontage mentioned in the writing hereinafter set forth. The second count is for $12,000 upon a promissory note.

Defendant Millard Durham answered denying the obligation represented by the note and alleging he offered, without the consent of his wife, to allow plaintiff a $12,000 credit for his interest in the California venture if plaintiff decided within three days to purchase the real property in Tucson; alleged the written instrument was without consideration and that the consideration had failed because plaintiff was unable to convey to the defendant the California property. He further answered that the executed instrument was conditional and plaintiff had failed to avail himself thereof. He also pleaded the Statute of Frauds. Mrs. Durham answered making the same denials and alleging she was not a party to the transaction and pleaded the Statute of Frauds.

At the close of the evidence, on motion made by the defendants, the plaintiff abandoned the first count and elected to ask for relief only on the indebtedness represented by the note.

Over defendants' objection the plaintiff was allowed to submit evidence to the effect that on September 17, 1952, the defendants entered into an oral arrangement whereby Mr. Durham agreed to take over whatever interest plaintiff had in the mill business and as consideration therefor Durham was to allow plaintiff to select one of two real properties located in Tucson and owned by the defendants. In connection with the deal Mr. Durham executed the following promissory note:

"$12,000          September 17, 1952
for value received, Millard M. Durham promise to pay to Grover C. Dodd, or order, at 2948 East Eighth St., Tucson, Arizona the sum of Twelve thousand dollars ($12,000.00), with interest thereon from date until paid at the rate of ——— per cent per ———; said interest payable ———, and both principal and interest payable only in current lawful money of the United States. And in case payment of this note, or any portion thereof, shall not be made at maturity, and suit be brought to enforce collection thereof, ——— further agree to pay the addi-

tional sum of ———— dollars, in like lawful money, as and for an attorney's fee.

/s/ Millard M. Durham"

Attached to this note was the following memorandum signed by the plaintiff and Mr. Durham:

"Bodega Bay, Calif.

"September 17, 1952

"This note drawn to the order of Grover C. Dodd is to be liquidated upon his acceptance of one of two properties as listed below:

3 unit Apartment at 1014 No. Seventh Ave or Speedway frontage at 4455 E. Speedway in Tucson, Arizona.

"/s/ Millard M. Durham

"/s/ Grover C. Dodd"

Plaintiff's evidence further indicated that the parties placed a value of $32,000 on the 3-unit apartment mentioned in the writing attached to the note; that this property was encumbered by a mortgage (established as being in the sum of $5,600); that plaintiff held an $8,000 mortgage on this property and other property of defendants; that, in the event plaintiff selected this property, he was to assume the $5,600 mortgage and cancel the $8,000 mortgage; and that, in the event he sold the property for more than sufficient to cover the two mortgages and the $12,000 represented by the note, he was to pay the difference to defendants.

As to the Speedway frontage mentioned in the memorandum, plaintiff testified that this frontage was to be 280 feet with a depth of 150 feet minus a 10-foot easement for an alley; that he was to assume a mortgage encumbering the entire property (the frontage was only a portion thereof) leaving the balance clear of encumbrances; and that, if he selected this frontage and sold it for more than sufficient to cover the encumbrances assumed and pay himself the $12,000 represented by the note, he was to pay the difference to defendants.

The defendants disputed portions of plaintiff's version of what was to happen in the event the deal was consummated. They testified that, in the event the plaintiff selected the Speedway frontage, he was also to cancel the $8,000 mortgage and that plaintiff was to make his selection in three or four days. They disputed the depth of the frontage claimed by plaintiff.

At the close of plaintiff's case and at the close of all the evidence defendants moved for a directed verdict upon various grounds, one being that the note sued on was an integral part of a contract for the conveyance of real estate and that the written memorandum in evidence was insufficient to meet the requirements of our Statute of Frauds, section 58–101, A.C.A. 1939.

Whatever the terms of the deal made by the parties, it was indisputably contemplated that when and if plaintiff selected one of the two properties mentioned in the rider to the note, the defendants would be required to convey the same to the

plaintiff. The defendant, Mrs. Durham, signed nothing and Durham signed only the note with the attached memorandum.

■■ In the case of Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641, we quoted with approval the Restatement of the Law, Contracts, section 207, which prescribes the test to determine the adequacy of a memorandum to make enforceable a contract under the Statute of Frauds. This section provides:

"A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, "* * * (b) the land, goods or other subject-matter to which the contract relates, and

"(c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

It will be observed the writing in this case does not even approach stating the terms and conditions of all the promises constituting the contract. There is no reasonable certainty in the description of the Speedway frontage. The frontage may be located but it was to be taken off of a larger tract, leaving the back portion to the defendants free of encumbrances. The depth is not designated. Boundaries must be ascertainable from the memorandum. This cannot be supplied by parol. Michelson v. Sherman, 310 Mass. 774, 39 N.E.2d 633, 139 A.L.R. 960, Annotation 965. The only thing to be gained from the writing as explained by the oral testimony is that defendant Durham was to pay plaintiff $12,000 by conveying to him one of two pieces of real property which he (Dodd) selected. There are many other promises and conditions that must be established, if at all, by parol. Consequently, if plaintiff is to recover, he must extricate himself from the provisions of the Statute of Frauds.

■ The trial court evidently took the view either that the note obligation was severable from the contract to convey land or that there had been a breach by the defendant of the entire contract by not conveying as agreed. Neither theory would permit recovery on the note. There is no way legally to separate the promise to pay from the obligations under the contract to convey the real estate. The note with the memorandum attached is an inseparable part of the whole agreement. Under such conditions, if a part of an inseparable contract runs afoul of the Statute of Frauds and is unenforceable, the entire contract is unenforceable. 49 Am.Jur., Statute of Frauds, sections 546-548; Becker v. Mason, 30 Kan. 697, 2 P. 850; Todd v. Bettingen, 98 Minn. 170, 107 N.W. 1049; Pettigrove v. Corvallis Lumber Mfg. Co., 143 Or. 33, 21 P.2d 198; Annotation 71 A.L.R. 479.

172

Plaintiff urges that this is an unconditional promise to pay $12,000. Such are not the terms of the note when construed with the memorandum attached. The memorandum must be considered a part of the note and when so considered the defendant is required to pay only according to its terms, that is, by the conveyance of real estate and if by reason of the Statute of Frauds the requirement to convey is unenforceable, by reason of the operation of the rule of indivisibility heretofore announced, the promise to pay is also unenforceable.

The note by its terms is payable contingently, the contingency being that the plaintiff select one of the properties in payment of the note. If the Statute of Frauds were not involved and assuming the contract were enforceable, defendants could require that the note be paid only in the manner provided, i. e., out of the real property. In the event selection were made and plaintiff sold the property for less than sufficient to pay the full $12,000, the obligation would be satisfied with no liability on the part of defendants to make up the deficiency. In other words, it is possible that, if the contract were fully performed, plaintiff would not realize the full amount of the note. We cannot impose an absolute liability for the full amount under such a contract.

It is contended by the plaintiff that the note was a partial consideration for the transfer by the plaintiff to the defendant Durham of plaintiff's interest in the California property; that the sale of this interest was a completed sale; and that defendant consequently owes the note. Plaintiff's own testimony refutes this. Concerning the transfer of his interest in the mill to Durham, plaintiff testified:

"Q. Did you understand my question, Mr. Dodd? Did you tell him anything about giving him a paper assigning your interest? A. Yes. I showed him a paper for release from the mill.

"Q. Was there anything, though, said about when you would give him your assignment of your interest in the company? A. As soon as we finished the completion of the papers on the deal, and paid me, the papers all at the same time to be, he would give me a release at that time.

"Q. You would give him what was necessary at that time? A. I would give him my interest in the mill, transfer my interest of the mill to him and I would be released from all obligations of the mill, mill and the timber.

"Q. That was to be done when the property was transferred and the note paid; is that right? A. Yes, sir."

In addition to this, after the purported contract was made, plaintiff did not resign his office as president of the California company and wrote at least two checks on the company account. Clearly, plaintiff had not and did not intend to relinquish

his rights in the California business until the entire deal was closed. It is unnecessary to decide whether under these conditions an attempt to orally sell his interest violated the California Statute of Frauds concerning the sale of personal property.

Plaintiff attempts to impose absolute liability by invoking a rule adopted by some courts that under certain conditions if it is agreed by the parties that the promissor has the option of performing in two alternate ways and one of them is unenforceable because of the Statute of Frauds, the other is enforceable. There is a division of authority on this matter. 49 Am.Jur., Statute of Frauds, section 549. It is unnecessary to announce which line of authority we would adopt for the reason there is no evidence in this case it was a stipulated part of the contract that Mr. Durham had an alternative option or that he agreed to pay the note in any other manner than by the transfer of real property. The cases cited by the plaintiff are cases wherein the contract expressly gave the promissor the option to select the manner of performance. We are unable to find any evidence that this purported contract carried any such provision. That statement is made in plaintiff's brief without reference to testimony supporting it. This defendant had a right, if the contract was to be enforced at all, that it be enforced according to its terms. We cannot engraft an additional alternative provision thereon merely to escape the operation of the Statute of Frauds.

It is our view that the defendants' motion for a directed verdict should have been granted. It is unnecessary to discuss the many other assignments of error.

Judgment reversed with instructions to enter judgment for the defendants.

LA PRADE, C. J., and UDALL, PHELPS, and STRUCKMEYER, JJ., concur.