417 P.2d 382

John A. PATTON, Robert Bohn and Martha Riley, Executrix of the Estate of William P. Riley, Appellants,

v.

PARADISE HILLS SHOPPING CENTER, INC., and Arizona corporation, and Leroy B. Malouf, Appellees.

No. I CA–CIV I85.

Court of Appeals of Arizona.

July 29, 1966.

As Modified on Denial of Rehearing Sept. 2, 1966.

Review Denied Oct. 18, 1966.

Brown, Vlassis & Bain, by Jack E. Brown, Phoenix, for appellants.

Snell & Wilmer, by Larry Vickrey, Phoenix, for appellees.

STEVENS, Chief Judge.

The appellants were the plaintiffs in the Superior Court. The trial court denied the plaintiffs' motion for summary judgment and granted the defendants' motion for summary judgment. Judgment was entered in conformity with these rulings and the matter was brought before us on appeal. The main issue before us is the sufficiency of the record to establish an enforceable contract in relation to the claimed right to compel the transfer of a long-term lease of land improved by a building. There are other issues incident to and contingent upon the main issue.

Plaintiff Patton is a graduate of Northwestern University, he having been awarded a science degree in engineering. His occupation is that of a professional corporate director employed by corporations because of his particular skill in cost re-

duction organization, labor relations and overall cost production. Patton also invests his personal funds. In relation to his investment interests he "looked for depreciation for income purposes, income tax", due to his "high income tax bracket" he was "desirous of making a sound investment to give me the opportunity to take advantage of this double declining depreciation".

Riley was a college friend of Patton who came to Arizona, was duly licensed as a real estate broker in Arizona and was a partner with Bohn, another duly licensed broker. Patton informed Riley of Patton's investment desires and in early 1961, Riley informed Patton that the then contemplated Maryvale Medical Center might meet Patton's requirements since Patton "could be the original owner and get this high depreciation that I needed". The record does not disclose that Riley or Bohn ever received a listing of the property in question from either of the appellees.

The defendant Malouf is a Phoenix business man with diversified interests. The defendant Paradise Hills Shopping Center, Inc., is a corporation and Malouf is the owner of all the stock of the corporation as well as being the president thereof. Malouf Enterprises is another corporate business interest of the defendant Malouf and is engaged in the contracting business. The defendant Malouf is licensed by the State of Arizona as a real estate broker and does business under the name and style of National Realty and Investment Company. In that aspect of his business life, the defendant Malouf has a full time employee, a duly licensed real estate salesman by the name of Mack. Burton B. Malouf and W. B. Malouf are brothers who reside in Los Angeles and they are uncles of the defendant Malouf. In this opinion, the defendant Malouf will be so identified or will be simply referred to as Malouf. Gaines is an Illinois lawyer who is also a CPA and he represented Patton in connection with the problems involved in this litigation. These are the main persons who are involved in the solution to our problem.

Before further examining the record, we believe that it is appropriate to examine some of the legal principles which will guide us in our considering of this case. We do not look beyond the record on appeal in our review of the matter presented to us. Lawless v. St. Paul Fire & Marine Insurance Co., Ariz., 415 P.2d 97 (1966). Swansea Properties, Inc. v. Hendrick, 3 Ariz.App. 594, 416 P.2d 1015, 1966.

Rule 56 of the Rules of Civil Procedure, 16 A.R.S. is the rule governing motions for summary judgment. Rule 56 (a) makes this procedural step available to claimants and Rule 56(b) makes motions for summary judgment available to defending parties. It is pursuant to these sections of the rule that the respective parties presented their motions to the trial court. Rule 56(c), as amended in 1963, provides in part:

> "Motion and proceedings thereon. * * The judgment sought shall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law."

Rule 56(e), as amended in 1963, provides in part:

> "Form of affidavits; further testimony; defense required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Under these rules, allegations and denials contained in non-verified pleadings, alone will not be determinative of the merits of a motion for summary judgment. However, in those instances wherein an allegation contained in a non-verified complaint is admitted in the responsive pleading, that admitted fact can be considered by the court in evaluating a motion for summary judgment. In Wakeham v. Omega Construction Company, 96 Ariz. 336, 395 P.2d 613 (1964), the court had under consideration a plaintiff's motion for summary judgment. The court stated:

"In effect, what defendants are contending is that they have made negative or contradictory allegations creating a genuine issue and they might have evidence to support it. This they cannot do. Stevens v. Anderson, 75 Ariz. 331, 256 P.2d 712. When the motion for summary judgment was filed by plaintiff, together with proof of specific facts, the time had arrived for them to come forward with a showing of facts equally as specific to controvert them. Mere denials will not suffice at this point. (Quoting cases)" 96 Ariz. 340, 395 P.2d 616.

The same legal principles apply when considering a defendant's motion for summary judgment. Where the motion for summary judgment filed by a defendant points out an absence of facts sufficient to establish a claim for relief, the plaintiff may not rest upon the allegations of the complaint but must come forward with facts which meet the test of the rules sufficient to support that claim for relief.

■ In our examination of this record, we have viewed the same in the light most favorable to sustaining the position of the plaintiffs, subject to the requirements of the rule, the plaintiffs being the parties against whom the court ruled in the granting of the motion for summary judgment. Nationwide Health Clubs, Inc. v. State Board of Barber Examiners, 3 Ariz.App. 364, 414 P.2d 752 (1966).

Article 1 of Title 44 of the Arizona Revised Statutes relates to the subject of the Statute of Frauds. Section 44–101 A.R.S. is a portion of this article and states in part:

"No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \*

"4. Upon a contract to sell or a sale of goods or choses in action of the value of five hundred dollars or more, unless the buyer accepts part of the goods or choses in action, and actually receives them or gives something in earnest to bind the contract, or in part payment, \* \* \*.

\* \* \* \* \* \*

"7. Upon an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission."

Solely for the purpose of outlining the basic position of the plaintiffs, a portion of the non-verified complaint is quoted. The complaint sets forth four claims for relief. The first claim for relief relates to Patton and alleges:

"III

"On or about May 5, 1961, for good and valuable consideration, defendants promised to plaintiff John A. Patton to obtain a lease on certain realty consisting of approximately 3.47 acres adjacent to a hospital site then under construction at Fifty-First Avenue and Maryvale Parkway in the City of Phoenix, State of Arizona, for a term of sixty-six (66) years and to construct on said realty a medical center office building, to be known as the Maryvale Medical Center, in accordance with certain agreed upon plans and specifications and to first offer to sell said building to plaintiff

John A. Patton for a total purchase price of Six Hundred Fifty Thousand Dollars ($650,000) and a total cash consideration not to exceed One Hundred Fifty Thousand Dollars ($150,000), all as more particularly set forth in a written memorandum dated May 5, 1961, a true copy of which is annexed hereto as Exhibit 'A', as amended in certain respects by a memorandum of agreement dated August 11, 1961, referring to additional building and a correspondingly increased total purchase price of Eight Hundred Twelve Thousand, Five Hundred Dollars ($812,-500), a true copy of which is attached hereto as Exhibit 'B'. On or about August 25, 1961, defendants again renewed their aforesaid promise and, also for good and valuable consideration, provided to plaintiff John A. Patton the right of first refusal hereinabove referred to by written instrument dated August 25, 1961, a true copy of which is attached hereto as Exhibit 'C.' "

The complaint further alleges that the defendant secured the lease, constructed the building and refused to offer the same to Patton as agreed. The answer generally denies the allegation of the complaint. In relation to the above quoted paragraph the answer admits Exhibit C and alleges that the lease was secured before Patton and Malouf met and that the construction was commenced before they met.

Exhibit A is a communication dated May 5, 1961 addressed to the Malouf Construction and Development Company. This exhibit to the complaint will be referred to as the letter of 5 May. The opening recitation thereof is:

"It is my intent to purchase from you the following described real estate, including improvements to be erected thereon, all in accordance with the various terms and conditions that are hereinafter set forth, for the sum of $650,-000.00."

It further requires the addressee to undertake to acquire the land on a 66 year lease with renewal option terms to 99 years, with an annual rent not to exceed $5,600 a year. The addressee of the communication is to undertake the construction and lease of the office building.

One of the terms requires:

"c) Permanent mortgage financing in an amount not less than $500,000.00 at an interest rate not greater than 6¼% per annum, self-amortizing in constant monthly installments over a period of 20 years or greater. * * *"

Another term relates to leases. Another term requires the addressee to secure a three year option to,

"* * * acquire a lease for approximately 2 acres of contiguous land adjacent to the developed site, on terms identical (pro rata) to the lease on the original site".

The proposal requires a,

"separate undertaking to provide me with the necessary assurance that no medical center office building will be erected upon the grounds of the Maryvale Community Hospital for a period of at least 5 years. "An undertaking to provide me with a 99 year lease for 5 acres of land contiguous to the site herein referred to and on the West side thereof at no cost to me upon pro rata annual rent terms identical to the present site, subject, however, only to my use of this 5 acre parcel to develop a convalescent hospital or for delivery and assignment to persons or parties who will undertake such development. This lease will bear no ground rent for a period of at least 3 years at its inception."

The proposal further recites:

"That you will, upon my instruction and upon my request, at your own cost and expense, initiate legal proceedings, including appeals if necessary, to enjoin and prevent the Maryvale Community Hospital from constructing upon their property a medical office building.

* * *

"A check for $10,000.00 payable to William P. Riley, Real Estate Broker, of Scottsdale, Arizona, issued by myself, has been delivered to the Broker, naming

him as Escrowee, as an earnest money deposit in connection with this Letter of Intent. When you are ready to affix your signature to the acceptance hereof, we will be ready to make our deposit in an escrow company or bank to be designated by you and entered into a more formal contract, covering with greater particularity and detail the obligations of the parties."

At the end of the proposal there is a provision for the acceptance thereof as follows:

"ACCEPTED this_____day of May, 1961 MALOUF CONSTRUCTION AND DEVELOPMENT CO.
BY ————————————————"

This document does not purport to be signed by Patton nor does the acceptance thereof purport to be executed. It is interesting to note that the document is not addressed to, nor is the acceptance to be executed by, the defendant Paradise Hills.

Exhibit B to the complaint is another Patton letter of intent, this being dated August 11, 1961, and being addressed to Malouf as President of Paradise Hills. This exhibit will be referred to as the letter of 11 August. Due to changes in construction plans, the contemplated size of the building had been increased and the contemplated cost had been increased so that this offer recited $812,500. In place of the 66 year lease recited in the letter of 5 May, the letter of 11 August recites a 60 year lease. The mortgage provisions are similar except for the fact that the amount of the mortgage was increased to the sum of $600,000. Some of the specific requirements contained in the letter of 5 May are omitted from the letter of 11 August and the document ends with the following paragraph:

"A check for $10,000.00 payable to William P. Riley, Real Estate Broker of Scottsdale, Arizona, issued under date of May 5, 1961, and now held in his possession in escrow, shall be considered as an earnest money deposit in connection with this Letter of Intent."

There is a provision for acceptance again by Malouf Construction and Development Company. This document does not purport to have been signed by Patton. No place in the record does Patton affirmatively state that he has signed any document.

Exhibit C to the complaint, hereinafter referred to as the letter of 25 August, is as follows:

"(Letterhead of Malouf Enterprises, Inc.)
August 25, 1961
Mr. John A. Patton
c/o Theodore Gaines
Chicago, Illinois
Dear Sir:
This is to serve as a right of refusal on your part to purchase a Medical Building to be located on 51st Avenue adjacent to the Maryvale Community Hospital, comprising approximately 3.47 acres of land. We would keep the building in accordance with plans and specifications, delivered to Travelers Insurance Company with the following characteristics: Office space of approximately 38,500 sq. feet, a completely developed site, permanent financing for $600,000.00 or more for a term of twenty years with interest not to exceed 6¼% per annum. Total rental area to produce not less than $155,000.00 per year. The purchase price is $812,500.00. The down payment is to be $150,000.00 and the balance to be paid on or before five years with 5% interest. We are now building approximately 27,000 feet.

"This offer is predicated on our being able to obtain enough leases to commence the additional 10,000 plus feet before the first tenant occupies the building. We would then close an escrow with a reputable title company and impound an agreed upon sum until all construction is completed.
Very truly yours,
PARADISE HILLS SHOPPING CENTER, Inc.
Leroy B. Malouf
Leroy B. Malouf"

Patton's second claim for relief is based upon a claimed secret sale by the defendants to Malouf's uncles, coupled with a claim for false representation and misrepresentation. The third claim for relief is presented on behalf of Bohn and the Estate of Riley, urging the right to a real estate commission in the sum of $48,750 by virtue of a claimed production of Patton as a buyer, ready, able and willing to buy. The fourth claim for relief is one on behalf of Patton seeking damages by reason of secret dealings with Malouf's uncles.

As to the third claim for relief, Malouf denied having given a listing to Bohn or Riley or either of them and he admits that had the property been sold to Patton, the defendants would have paid a commission in which Bohn and Riley would have shared.

We have presented to us for our consideration the depositions of Patton, Malouf and the two uncles. Reference is made to the depositions of Bohn and Mack, neither of these being before us. The W. B. Malouf deposition makes reference to 14 different exhibits marked as Deposition Exhibits for identification, and none of these are before us. The deposition of the defendant Malouf makes reference to Deposition Exhibits 1 through 7 and of these only Exhibits 4, 6 and 7 are before us. The Patton deposition discloses that much of the knowledge relied upon by Patton was personal to Gaines and there is no indication that his deposition was taken. The depositions of the principal individual parties to the action refer to an exchange of correspondence and none of the correspondence is before us.

In relation to the claim for a real estate commission, Malouf denied giving a listing to Riley or Bohn and there was no proof that such a listing had been given. The uncontradicted proof is that Riley as a friend of Patton volunteered to find for Patton an investment which would meet Patton's needs and that Riley, through Mack, interested Malouf in the sale. The situation presented to us does not come within the rule that a real estate broker who has a listing and who has produced a prospect who is ready, able and willing to buy on the sellers terms, has thereby earned his commission even though the seller thereafter declines to sell. We are not called upon to decide whether the defendants would have been obligated to pay a real estate commission had the contemplated sale become a reality. Subsection 7 of Section 44–101 A.R.S. quoted above discloses a lack of entitlement to the real estate commission claimed. The record does not disclose that Riley became Malouf's agent by virtue of Patton's election to entrust Riley with $10,000. The record discloses that this money was never tendered to Malouf or that Malouf had the right to demand the personal receipt thereof. At most, this money was to be deposited in an escrow which was thereafter to be established. The record does not disclose Malouf's right to demand and to receive the $10,000 other than through a formal escrow. At the time of Patton's deposition, Riley had returned the money to Patton.

Section 44–101 A.R.S. quoted above does not permit an action to be brought,

> * * * "unless the promise or agreement * * * or some memorandum thereof, is in writting and signed by the party to be charged * * *."

This statutory requirement has been construed by the Arizona Supreme Court. One such case is the case of Durham v. Dodd, 79 Ariz. 168, 285 P.2d 747 (1955), the opinion having been authored by Mr. Justice Windes. Therein the court pointed out with reference to the agreement then under consideration:

> "It will be observed the writing in this case does not even approach stating the terms and conditions of all the promises constituting the contract." (79 Ariz. 171, 285 P.2d 749)

The court pointed out a number of the inadequacies of the memorandum. The court proceeded saying:

> "Under such conditions, if a part of an inseparable contract runs afoul of the

Statute of Frauds and is unenforceable, the entire contract is unenforceable." (79 Ariz. 171, 285 P.2d p. 749)

In relation to the matter of signatures, Malouf did state in one place in his deposition, speaking of Patton, as of the time of the letter of 11 August,

"He stated that he was willing to buy it. He signed an offer."

However, in Patton's deposition he knew of no document bearing his signature. The record reflects that neither party knew of any document bearing Malouf's signature save and except the letter of 25 August.

■ Patton testified that after the receipt of the letter of 25 August, he took no action toward accepting the offer therein contained. The letter of 25 August cannot be construed as an acceptance of either the letter of 5 May or the letter of 11 August in that it differs materially from the earlier exhibits. Patton testified that he took no action with reference to the letter of 25 August until after he had heard in a round about way, that Malouf had transferred the property to his uncles. Patton urges that there was a consideration flowing to Malouf which would prevent Malouf from revoking the offer, urging among other things, that Patton had held himself in readiness to perform thereby losing investment opportunities. The record fails to disclose that Malouf was so informed and this cannot be treated as a consideration which would preclude him from withdrawing the offer set forth in the letter of 25 August, withdrawing the same by effecting a sale to his uncles. The clear import of the record is that Patton would not have completed the transaction based soley upon those matters set forth in the letter of 25 August. This fact clearly indicates that this letter comes within the rule of Durham. An offer which is given

without consideration to the offeror can be withdrawn at any time prior to the acceptance by the offeree. Davies v. Langin, 203 Cal.App.2d 579, 21 Cal.Rptr. 682 (1962); Sokol v. Hill, 310 S.W.2d 19 (Mo.App.1958).

■ There being no contract enforceable by Patton, there can be no claim for relief for the breach thereof. The record clearly discloses that the Statute of Frauds is a complete defense. The fact of negotiations, verbal promises and tentative agreements, coupled with hearsay statements, does not cure the impediment to enforceability. The record is replete with hearsay statements contained in Patton's deposition, quoting various persons other than Malouf with no showing of agency or the right to bind Malouf thereby which statements do not measure up to the requirement of Rule 56(e), that testimony submitted in support of or in opposition to a motion for summary judgment,

"* * * shall be made on personal knowledge, shall set forth such facts as would be admissable in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * *"

It is our opinion that a detailed recitation illustrative of the type of hearsay relied upon by Patton would add nothing to the case law of this State.

In Patton's reply brief this Court is requested to give guidance to the trial court in relation to Patton's contention that his motion for summary judgment was well taken. Since the defendants' motion for summary judgment was well taken, the plaintiffs' motion for summary judgment could not have been granted.

The judgment is affirmed.

CAMERON and DONOFRIO, JJ., concur.