573 P.2d 966

**Theodore D. GARFIELD dba Garfield & Associates, Plaintiff-Respondent,**

v.

**Chester J. TINDALL, Defendant-Appellant.**

No. 12212.

Supreme Court of Idaho.

Jan. 20, 1978.

Perce E. Hall of Hall & Friedly, Mountain Home, J. Charles Blanton and Donald J. Farley of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-appellant.

Samuel Kaufman, Jr. of Anderson, Kaufman, Anderson & Ringert, Boise, for plaintiff-respondent.

DONALDSON, Justice.

The plaintiff-respondent, Theodore Garfield, is a real estate broker. Garfield instituted this action to recover a sales commission allegedly owed to him by the defendant-appellant, Chester Tindall. Garfield prevailed in district court, receiving a $49,900 judgment. Tindall appeals.

The record discloses that on January 12, 1974, Tindall signed a "Real Estate Broker's Employment Contract" (a listing agreement) authorizing Garfield to sell certain farm lands. The property in question is some 2,156 acres of farm land located in Owyhee County. · Title to the property is held in the following manner: 320 acres in the name of Tindall; 320 acres in the name of Tindall's wife; and the remainder in the name of Standard Credit Corporation, a family corporation composed of Tindall, his wife, son, and mother-in-law. Tindall is the president and managing agent of the corporation.

The brokerage contract was a standardized form contract. The selling price, terms of the sale, and description of the property to be sold appeared in the contract as follows:

"*Chet Tindall* farm or ranch described as *2,156 acres legal to be attached* * * * [s]elling price, free of encumbrances: *$765,000*; Terms: *terms negotiable.*" (portions italicized were handwritten in blank spaces following printed portion).

Tindall provided Garfield with a U. S. Geological Survey Map which was color-coded showing where the 2,156 acres were located and graphically indicating the legal description of the property. This map was never physically attached to the brokerage contract but was handed to Garfield's employee when the brokerage contract was signed.

Title to a large portion of the 2,156 acres had been acquired through desert entry. Pursuant to an agreement with the Bureau of Land Management (BLM), Tindall was not to dispose of some of the most recently patented property for a period of two years. Tindall was required to sign an affidavit agreeing not to sell the patented property for a period of two years. Although not clear from the record, the agreement was presumedly required by BLM rules or regulations concerning the sale of patented property.

After the brokerage contract was signed, Garfield contacted Alma Clark who was interested in purchasing the property. Clark was made aware of how title to the property was held and also of the limitations concerning sale because of the BLM agreement. Tindall assured Clark that the corporate ownership presented no problems regarding the sale. On January 30, 1974, Clark signed an earnest money agreement offering to purchase the property. The agreement provided that 1,200 acres (the land subject to the BLM agreement) were to be leased for $118,000 and that the remaining acres were to be purchased for $647,000. The lease contained an option to purchase which could be exercised after the expiration of a two year period. The lease option to purchase was proposed by Clark because of the BLM agreement. The earnest money agreement was presented to Tindall for his consideration but never accepted.

Tindall advised Clark that he was not in a position to immediately sign the agreement. He wanted to discuss the terms of the sale with his accountant and attorney. Additionally, he needed to find a place to move his cattle and farm machinery. There was also an existing mortgage on the property which Tindall wanted Clark to assume and this required the approval of Tindall's mortgage company. Tindall contends he did not sign the earnest money agreement because of these problems.

A second earnest money agreement was executed by Clark on March 23, 1974, providing terms of sale to be cash or upon closing, terms to meet the requests of the seller. This agreement was never presented to Tindall in writing, but the terms were orally communicated to him on March 23rd. Tindall again indicated that he needed more

time to work out certain problems and details. Tindall had received a letter in mid-February from his accountant setting forth methods for handling the sale but at this time had not found a place to move his cattle and machinery.

Clark withdrew his offer to purchase the property on March 24, 1974 because of the delays surrounding the sale. Clark thereafter acquired other property. The plaintiff-respondent Garfield thereafter instituted this action on April 10, 1974 seeking to recover a sales commission due to him because he had produced a buyer as specified in the brokerage contract.

After a trial without a jury, the district court granted a judgment in favor of Garfield.

Tindall appeals contending that Garfield was not entitled to a judgment for two reasons. First, Tindall claims that the brokerage contract was invalid under the provisions of I.C. § 9–508 in that it was not signed by all the owners of the property and because the property description was insufficient. Second, he claims that Garfield did not satisfy all of the conditions precedent of the brokerage contract entitling him to a sales commission.

I

Title to the property in question was held in the name of Tindall, his wife, and the family corporation. Tindall first claims that the brokerage contract violated the statute of frauds in that it was not signed by all the owners of the property. Tindall argues that he cannot be held liable under the contract because of this violation of the statute of frauds.[1]

In a recent case, *C. Forsman Real Estate Co. v. Hatch,* 97 Idaho 511, 547 P.2d 1116 (1976), this Court held that where a brokerage contract for the sale of community property was signed and executed by the husband, the fact that it was not signed or ratified by the wife did not relieve the husband of liability under the contract. The rationale of that case applies to this appeal. As we noted in *Forsman,* "[t]he purpose of I.C. § 9–508 is to prevent fraudulent or unfounded claims of brokers * * and has as its [objectives] avoiding disputes as to whether or not an agreement in fact exists, the amount of a commission and the exclusive or non-exclusive terms of a listing agreement." 97 Idaho at 515, 547 P.2d at 1120. The purpose of the statute was not to allow a co-owner of property to escape liability under a brokerage commission contract when the other co-owner(s) of the property did not sign the contract. We conclude that the district court correctly held that Tindall could not escape liability under the contract because the other owners of the property had not signed the contract.

Our decision is not influenced by the fact that some of the property involved may or may not be community property nor is our decision based in any way on the fact that Tindall may or may not have been authorized by the corporation to enter into brokerage contracts or to sell the property.[2]

We hold that a co-owner of property, who has expressly or impliedly represented to the broker that he can convey the property to be sold, cannot escape personal liability under a brokerage commission contract because it was not signed by the other co-owner(s).

Tindall also argues that the brokerage contract was invalid because the description of the property was insufficient.

---

1. "9–508. Real estate commission contracts to be in writing.—No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative."

2. The district court made no findings concerning the nature of the property owned by Mr. and Mrs. Tindall, i. e. whether it was community or otherwise. The district court also made no finding on the question of Tindall's authority to act in behalf of the corporation. These facts are not controlling in this appeal and thus findings by the district court were not required.

on previous occasions this Court has stated that " * * * the description in the agreement is sufficient where it is shown that there was no misunderstanding between the property owner and the broker as to the property to be offered for sale, and where it is sufficient to enable the broker to locate the property, show it, and point out its boundaries to the prospective purchaser." *Central Idaho Agency, Inc. v. Turner,* 92 Idaho 306, 311, 442 P.2d 442 at 447 (1968). The district court held that the color-coded and marked U. S. Geological Survey Map supplied to Garfield by Tindall at the time the brokerage contract was signed was intended by the parties to constitute the legal description in the brokerage contract. The district court further held that the map fulfilled the requirements specified in *Turner.* We affirm the holding of the district court.

## II

Tindall further argues that Garfield did not satisfy all of the conditions of the brokerage contract and was therefore not entitled to a commission. Tindall contends that Garfield was not entitled to a commission until Tindall and the prospective buyer procured by Garfield had completed all negotiations for the sale of the property. Tindall claims that the words "terms negotiable" which appear in the contract require this result.

"[I]f a broker who has contracted with a prospective seller to procure a ready, willing and able purchaser for the seller's real property presents a buyer ready, willing and able to buy on terms listed by the seller with the broker or on other terms which the seller accepts, in the absence of special conditions in the broker's employment contract, the broker is entitled to his commission."

*Rogers v. Hendrix,* 92 Idaho 141, 144, 438 P.2d 653, 656 (1968). The brokerage contract did not list specific terms. Since specific terms were not listed, Tindall, the seller, was given the freedom of specifying exact terms at a later date and Garfield was obligated to produce a buyer willing to purchase according to terms negotiated between the seller and prospective buyer before being entitled to a commission. Garfield satisfied his obligations under the contract by producing a ready, willing, and able buyer who offered to purchase the property for cash or on any other terms specified by Tindall at closing. Under the terms of the contract Garfield was obligated to "find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as [the seller] may accept * * *." Tindall's contention that Garfield is not entitled to a commission until the parties completed negotiations for the sale is without merit. Garfield had satisfied all the conditions imposed upon him by the contract.

The district court correctly concluded that Tindall was obligated to pay the sales commission specified in the contract when Garfield produced a buyer willing and able to purchase at a price and upon the terms indicated by Tindall. The judgment of the district court is affirmed.

Costs to respondent.

SHEPARD, C. J., and McFADDEN, BAKES and BISTLINE, JJ., concur.