691 P.2d 1107

**S.C. (Samantha) NOWELL,
Plaintiff-Appellant,**

**v.**

**ANDREW WRIGHT ENTERPRISES,
INC., an Arizona corporation,
Defendant-Appellee.**

**No. 1 CA–CIV 6395.**

Court of Appeals of Arizona,
Division 1, Department C.

June 21, 1984.

Reconsideration Denied Aug. 28, 1984.

Review Denied Dec. 4, 1984.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Larry L. Smith, Brian C. Bond and Donald E. Dyekman, Phoenix, for plaintiff-appellant.

Karp & Levy, P.C. by Marvin D. Karp, Tucson, for defendant-appellee.

## OPINION

GREER, Judge.

The issue in this appeal is whether the trial court erred in granting summary judgment in favor of the seller, appellee Wright Enterprises, Inc., and against the real estate broker, appellant S.C. (Samantha) Nowell. We find no error and affirm.

On March 19, 1980, Andrew Wright, president of Wright Enterprises, Inc., signed a listing agreement with Nowell, a real estate agent, on behalf of Wright Enterprises. Wright Enterprises owned various parcels of real estate in Pima County. This listing agreement stated a five percent commission rate, but described no property. Instead, the phrase "Call Lister" was written in several blank spaces in the listing agreement which would normally contain the property's description. No property was described in the listing agreement, apparently because Wright told Nowell that he had not yet decided whether he would sell stock in Wright Enterprises and/or certain real estate holdings of Wright Enterprises. Subsequent to the execution of the listing agreement, Wright Enterprises sold certain of its real property. Nowell seeks a commission with respect to that sale.

The trial court granted summary judgment in favor of Wright Enterprises and against Nowell on the basis that the writing did not comply with the Statute of Frauds. This appeal followed.

■ The applicable Statute of Frauds, A.R.S. § 44–101(7), states:

No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is

brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

....

7. Upon an agreement authorizing or employing an agent or broker to purchase or sell real property, or mines, for compensation or a commission.

The Statute of Frauds requirement for brokerage contracts has been strictly enforced in Arizona. *Olson v. Neale,* 116 Ariz. 522, 570 P.2d 209 (App.1977). In order to satisfy the Statute of Frauds, a listing agreement must show both the fact of employment, *Maricopa Realty & Trust Co. v. VRD Farms, Inc.,* 10 Ariz.App. 524, 460 P.2d 195 (1969), and the amount of the commission to be paid. *Gray v. Kohlhase,* 18 Ariz.App. 368, 502 P.2d 169 (1972). Nowell argues that the listing agreement need not specifically describe the property to be sold.

This contention presents a question of first impression in Arizona: to what degree must real property be described in a listing agreement before a real estate agent may bring an action to recover a commission? Since Arizona has no case law directly on point, Nowell relies heavily upon a passage from *Pray v. Anthony,* 96 Cal.App. 772, 274 P. 1024 (1929), wherein the court stated:

[T]he essential part of a contract to employ a real estate broker, so far as the statute of frauds is concerned, is the matter of the employment and consequently need not describe the land specifically, if the terms of the employment can be made definite without it. The description of the land and its identity are only incidental to the main purposes of the contract, and, since contracts of that nature do not purport to involve the title or right of possession of land, much greater liberality is allowed in construing and curing defective descriptions therein than in cases of executory contracts to convey land or in deeds of grant, for, as stated, so far as the statute of frauds is concerned, the terms of the employment

are the essential parts. The well-established rule is, therefore, that broker's contracts are not to be declared void merely because of a defect, uncertainty or ambiguity in the description of the property to be sold, when such defect can be cured by allegations and proof of extrinsic facts or circumstances.

274 P. at 1026 (citations omitted). *See also Needham v. Abbot Kinney Co.,* 217 Cal. 72, 17 P.2d 109 (1932) (approved rule stated in *Pray* ).

We do not accept Nowell's contention that, in view of this language, the phrase "Call Lister" is sufficient reference to the subject property to satisfy the Statute of Frauds. In our opinion, the listing agreement must contain some descriptions of the property. As one commentator stated:

Note that even in jurisdictions taking a more liberal view of what constitutes a sufficient description, the position has been taken that parol evidence may not be employed to make the actual identification of the property, or to create a description of it.

30 A.L.R.3d 935, 945 n. 17 (1970). In the cases cited by Nowell, which take a "liberal view of what constitutes a sufficient description," the brokerage contracts provided some description of the property in question. *Needham* (authorization specifically covered "the properties owned by the Abbot Kinney Company"); *Pray* (written authorization designated property as "my house"); *Central Idaho Agency, Inc. v. Turner,* 92 Idaho 306, 442 P.2d 442 (1968) (listing agreement described property as "Clara Turner farm"); *Gifford v. Straub,* 172 Wis. 396, 179 N.W. 600 (1920) (written authorization designated property as "my place"). The courts in California and Idaho have specifically recognized that the brokerage contract must contain some property description. In *Glazer v. Hanson,* 98 Cal.App. 53, 276 P. 607 (1929), the court stated, "[i]n short, a description of land sought to be sold under a broker's contract can be cured but not created by parol evidence." 276 P. at 611. In *Turner,* the Idaho Supreme Court stated that parol "ev-

idence may be presented, not to create a description, but to cure a defective one otherwise sufficient." 442 P.2d at 447. Thus, even under the approach taken in California, Idaho, and Wisconsin, the listing agreement must provide some description of the property. In this case, the listing agreement did not contain any description of the property offered for sale.

Arizona has applied the Statute of Frauds more strictly than California, at least with respect to the amount of a commission. We stated in *Gray v. Kolhase, supra:*

> A memorandum on which an action by a real estate broker to recover commission is based must contain the terms and conditions of the promise sought to be enforced....

We recognize that there is a minority view followed in California that the amount of commission may be shown by parol where there is a sufficient memorandum to show the *fact* of employment. See *Beazell v. Schrader,* 59 Cal.2d 577, 30 Cal.Rptr. 534, 381 P.2d 390 (1963). 18 Ariz.App. at 370, 502 P.2d 169 (emphasis in original). We emphasized the importance of the Statute of Frauds and held contrary to the California view:

> A memorandum, in order to satisfy a contract within the Statute of Frauds, must state the terms and conditions of all the promises constituting the contract and any deficiency in this regard cannot be supplied by parol. *Durham v. Dodd,* [79 Ariz. 168, 285 P.2d 747 (1955)] ...

We hold, therefore, that the memoranda relied upon by appellees were insufficient to satisfy the Statute of Frauds for lack of an essential element, i.e., the *amount* of commission. Such deficiency cannot be remedied by resort to parol evidence, *Custis v. Valley Nat'l Bank,* 92 Ariz. 202, 375 P.2d 558 (1962), nor is parol evidence available to supply a missing term by labeling an agreement "ambiguous." *Lyon v. Big Bend Dev. Co.,* 7 Ariz.App. 1, 435 P.2d 732 (1968)

18 Ariz.App. at 370–71, 502 P.2d 169 (emphasis in original).

Nowell argues that even if the listing agreement itself is an insufficient memorandum, the agreement, combined with brochures which Wright gave to Nowell at the time the parties entered into the listing agreement, is sufficient to satisfy the Statute of Frauds. Nowell argues that the brochures can be considered in conjunction with the listing agreement and cites *Garfield v. Tindall,* 98 Idaho 841, 573 P.2d 966 (1978) for this proposition. However, in *Garfield* there was a specific reference in the brokerage contract to an attachment to the agreement which would more specifically describe the phrase "Chet Tindall farm or ranch described as 2,156 acres." Here, the listing agreement did not even refer to the brochures, and in fact, we would be required to resort to parol evidence to determine that the brochures were given to Nowell at the time the parties executed the listing agreement.

Nowell relies on the *Restatement (Second) of Contracts,* § 131 and § 132 (1979) to support her contention that the brochures, combined with the listing agreement, created a sufficient memorandum.

Section 131 states:

General Requisites of a Memorandum

Unless additional requirements are prescribed by the particular statute, a contract within the Statute of Frauds is enforceable if it is evidenced by any writing, signed by or on behalf of the party to be charged, which

(a) reasonably identifies the subject matter of the contract,

(b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and

(c) states with reasonable certainty the essential terms of the unperformed promises in the contract.

Comment (e) to that section states, in pertinent part, "Without reference to executory oral promises, the memorandum in context must indicate with reasonable certainty the nature of the transaction and must provide

a basis for identifying the land, goods or other subject matter."

Neither the written listing agreement nor the brochures provides even a basis for identifying the land subject to sale. The brochures contain floor plans and designs of townhomes located in a certain subdivision called Park West II Townhomes. A handwritten map on the front of one brochure depicts some streets, an address and a phone number. This map does not purport to define the property subject to the listing agreement. It contains no boundaries, no lots, and no description. Apparently, Wright did not own all of the lots in Park West II Townhomes, and he owned property not included in the brochures. The brochures are simply an insufficient basis for identifying the land subject to the listing agreement.

Arizona decisions which have relied upon the predecessor to § 131, former § 207 of the *Restatement of Contracts*, are helpful. *See Durham v. Dodd*, 79 Ariz. 168, 285 P.2d 747 (1955); *Shreeve v. Greer*, 65 Ariz. 35, 173 P.2d 641 (1946); *Del Rio Land, Inc. v. Haumont*, 118 Ariz. 1, 574 P.2d 469 (App.1977). Former § 207 provided:

> A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty,
>
> (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and
>
> (b) the land, goods or other subject-matter to which the contract relates, and
>
> (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.

This section was applied in Arizona to cases involving the sale of real property. *Durham; Haumont.* In *Durham*, the court stated that, "[B]oundaries must be ascertainable from the memorandum. This cannot be supplied by parol." 79 Ariz. at 171, 285 P.2d 747. In *Haumont*, the writings did not state the terms and conditions of payment nor did they "identify with any certainty the land involved." 118 Ariz. at 5, 574 P.2d 469.[1]

Although the language of current § 131 of the *Restatement* differs somewhat from former § 207, in our opinion the language of § 131 and the sound rule of *Durham* and *Haumont* require that the real property in question be described in the listing agreement or by reference to some other existing writing with "reasonable certainty." In the instant case, the property in question was not even described with "reasonable certainty" in the listing agreement or in the brochures.

Section 132 of the *Restatement (Second) of Contracts* does not persuade us to adopt Nowell's position. That section provides:

> Several Writings
>
> The memorandum may consist of several writings if one of the writings is signed and the writings in the circumstances clearly indicate that they relate to the same transaction.

Comment (c) to that section states, in pertinent part, "Even if there is no internal reference or physical connection, the documents may be read together if in the circumstances they clearly relate to the same transaction and the party to be charged has acquiesced in the contents of the unsigned writing."

In our view, the documents in this case, when viewed separately, do not clearly relate to the same transaction. Even if Nowell could establish by parol evidence that the handing of the brochures occurred at the same time as the signing of the listing agreement, there is no evidence that the purpose for giving her the brochures was to describe property subject to the listing agreement. Assuming Nowell could prove

---

1. The receipt and brochure in *Haumont* described the property as "LOT NO. 97 (72 Acres A-2) real estate."

**84**

Wright's acquiescence in the contents of the brochures, the contents fail to provide a sufficient description of the property.

Nowell next maintains that the custom and use of a term in a particular industry can be used to explain and make definite a writing which otherwise might have a vague or doubtful meaning for purposes of the Statute of Frauds. *Stulsaft v. Mercer Tube & Mfg. Co.*, 288 N.Y. 255, 43 N.E.2d 31 (1942). In an affidavit before the trial court, she states that "Call Lister" is a term which has been customarily used in the real estate industry to mean that the property listed for sale has been disclosed to the broker, and that the broker should be contacted to find out the description of the property which the owner is willing to sell. Nowell thus contends that the phrase "Call Lister" written on the listing agreement creates the same legal effect as if the listing agreement specifically described the properties being listed.

In our view, the phrase "Call Lister" cannot substitute for a description of the property. First, the language of the Statute of Frauds, of § 131 of the *Restatement (Second) of Contracts* and the cases under the *Restatement of Contracts*, former § 207, require that the property at least be described with *reasonable* certainty in the listing agreement. Second, there is no evidence that Wright was aware of the custom or practice associated with the phrase "Call Lister." *Cf. Persing, Dyckman & Toynbee, Inc. v. George Scofield Co.*, 25 Wash.App. 580, 612 P.2d 2 (1980) (trade custom unknown to defendant could not affect its right to reimbursement). Third, even if Wright was aware of the custom or practice associated with the phrase "Call Lister," the phrase simply means that there is an understanding between the seller and the broker, which understanding in this case is *oral*. A written reference to an oral agreement does not comply with the Statute of Frauds.

Nowell finally argues that a letter that she sent to the buyer, combined with the listing agreement and brochures, is sufficient to satisfy the Statute of Frauds.

This argument is without merit. A letter from a real estate agent to the buyer would not affect the liability of the seller, Wright Enterprises, with respect to a defective listing agreement.

For the foregoing reasons, the judgment is affirmed.

HAIRE and KLEINSCHMIDT, JJ., concur.