425 P.2d 130

**O. H. BUTLER, Appellant,**
**v.**
**Bob WEHRLEY, dba Bob Wehrley Realty,**
**Appellee.**
**No. 1 CA–CIV 324.**

Court of Appeals of Arizona.
March 13, 1967.
Rehearing Denied April 13, 1967.
Review Denied May 23, 1967.

John J. Doherty, Phoenix, for appellant.

O'Brien & Robbins, by Merrill W. Robbins, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal from a judgment n. o. v. against the defendant, O. H. Butler, and in favor of the plaintiff Bob Wehrley, dba Bob Wehrley Realty. The matter was tried before a jury which returned a verdict in favor of the defendant Butler. Plaintiff Wehrley's motion for judgment notwithstanding the verdict was granted and from said judgment Butler brings this appeal.

We are called upon to determine:

1. Whether there had been a valid revocation of the offer to exchange real estate prior to the acceptance by the offeree.

2. Assuming a valid contract for exchange of real property, the extent of the damages for the breach of said contract.

The facts necessary for a determination of this matter on appeal are as follows. Defendant Butler owned some 40 acres of agricultural land in Maricopa County, Arizona, and was desirous of selling or trading said property. On Friday, 2 August 1963 Butler signed an "agreement of exchange" on a form provided by the Bob Wehrley Realty. In the agreement the defendant offered to exchange his property free and clear, and valued at $100,000 or $110,000, for 63 apartments on Southern Avenue in Maricopa County, Arizona, owned by one J. C. Perry. Butler's property was free and clear of encumbrances, and Perry's property contained a mortgage of approximately $318,000. Perry's property was valued at $398,000. Butler was to receive in addition to the apartments the amount of $25,000 cash. The agreement, after providing that each party "furnish forthwith to the other an abstract of title prepared by a reliable abstract company showing, or a policy of title insurance insuring as of this date or subsequent good and marketable title", provided:

"This offer must be accepted by the second party on or before August 5, 1963, and 1st party agrees not to withdraw this offer prior to that date unless it is early rejected by _____ party. Each party covenants and agrees to and with the other that he has good right to

sell and convey his respective property and that except as stated above he is the owner in fee simple thereof and that the same is free of all encumberances.

"And in consideration of the mutual promises herein contained it is further agreed that should either party hereto fail to perform and carry out his part of this agreement, such party, so failing, shall pay all the broker's commission below provided for, this promise being made directly for said broker's benefit.

Dated: Aug. 2, 1963

/s/ O. H. Butler (Seal)

/s/ J. C. Perry (Seal)

"The undersigned brokers agree to aid and assist in consummating the foregoing exchange.

"/s/ A. W. Wehrley (Seal)

" * * *

"I hereby ratify and confirm the employment of Bob Wehrley Realty, Real Estate Broker, to procure a purchaser for my property above described in consideration of service performed by said broker in negotiating and bringing about the foregoing sale, hereby agree to pay said broker forthwith a commission of $5,000.00.

/s/ O. H. Butler (Seal)

" * * *

"I hereby ratify and confirm the employment of Bob Wehrley Realty, Real Estate Broker, to procure a purchaser for my property above described in consideration of services performed by said broker in negotiating and bringing about the foregoing sale, hereby agree to pay said broker forthwith a commission of $ per separate agreement.

/s/ J. C. Perry (Seal)"

It was the testimony of Butler that he signed these papers with the intention of discussing the matter with his attorney prior to the matter being consummated and that he did not intend to enter into an agreement at the time he did sign the documents. This is disputed by the plaintiff Wehrley. In any event, after signing this document on 2 August 1963 and before it was signed by Perry, the defendant Butler evidently had second thoughts about the transaction, and he testified that he asked a friend, also a real estate salesman, Zona Wells, to call the plaintiff Wehrley and cancel the transaction. This fact is disputed by the plaintiff and the testimony is conflicting as to what Zona Wells stated to Wehrley when the call was made on Saturday, 3 August 1963. Zona Wells testified in part as follows:

"Q And what was the nature of that discussion?

"A Well, first, we had gone over the figures. Then after looking over the apartments, Joe Mattingly and I told him that the deal was not good for Mr. Butler.

"Q What happened after that?

"A I told him to contact his lawyer. And he said, 'Well, what am I going to do now?'

He said, 'Will you contact Bob Wehrley?

And I said, 'Yes'.

"Q Did you contact Bob Wehrley?

"A Yes.

"Q And what was the nature of that conversation between you and Bob Wehrley?

"A First I said to Bob Wehrley, I said, 'Bob, I understand that you have showed a piece of property that belongs to me, Mr. Butler's property, and that you have written an agreement in exchange for some apartments.'

He said, 'Yes'.

I said, 'Do you remember, Bob, that I showed you that property, that 40 acres, and that we had about three

conversations in the past month on it?'

And first he said he didn't remember. And then later, when I brought his attention to the fact a little bit more he said, 'Yes, I remember that you did.'

And so then, I said to Bob, I said, 'Bob do you think those apartments are a good deal?'

And he said, 'Yes, I do'.

And I said, 'We don't feel like that it is a good enough deal for Mr. Butler.'

And he says, 'I do, and he has already signed the agreement'.

And I said, 'Well, Bob, if the deal goes through I would suggest our office deserves this commission'.

And he said, 'Well, Zona, I can't pay you half the commission'.

Joe Mattingly was listening in to the conversation on the other line, had me do the calling, my broker.

"Q Did you advise him that Mr. Butler didn't want to go through with the deal?

"A Yes.

"Q What did you say?

"A I said, 'Mr. Butler was here yesterday', and I said, 'he doesn't want the apartments, and he asked me to call you.'

And I said, 'Joe Mattingly has asked me to call you'.

"Q Did he understand clearly that Mr. Butler didn't wish to go further with the deal?

"A Yes, And he said, 'He has a deal, he has an agreement written up, and it's a deal'."

Perry did sign the exchange agreement on Monday, 5 August 1963, and Butler refused to sign the escrow instructions. Bob Wehrley, dba Bob Wehrley Realty, brought suit against Butler for the amount of $5,000.00 commission agreed to in the exchange agreement and the amount of $8,500.00 the plaintiff was allegedly to receive from Perry as commission on said sale.

The matter was tried before a jury and the two verdicts submitted to the jury were, (1) "for the defendant" Butler, and (2) for the plaintiff Wehrley "in the amount of $13,500", being the amount of $5,000 due from Butler to Wehrley on the sale of his property and $8,500 allegedly due from Perry to Wehrley. The jury returned a verdict in favor of the defendant and the plaintiff moved for judgment notwithstanding the verdict, which was granted, and the defendant prosecutes this appeal.

 The first question we have to decide is whether or not the evidence was sufficient from which the court could grant a judgment notwithstanding the verdict. Our Court has previously stated:

"The test on granting a motion for judgment notwithstanding the verdict is the same as that pertaining to the direction of the verdict during the trial. The evidence must be viewed in the light most favorable to sustain the verdict and if there is any substantial evidence from which reasonable men could have found the ultimate facts to be such as to sustain the verdict, the motion for judgment notwithstanding the verdict should be denied." In re Thompson's Estate, 1 Ariz. App. 18, 22, 23, 398 P.2d 926, 930 (1965).

In the instant case it is uncontroverted that the defendant signed the agreement of exchange which stated that he agreed not to withdraw the offer prior to 5 August 1963. The evidence is uncontradicted that Perry accepted the offer of exchange on 5 August 1963.

It must be kept in mind that we are dealing with three different contracts or agreements in the one instrument. First is the agreement between Butler and Perry for the exchange of the two properties, and we are only concerned with that transaction insofar as it effects Wehrley's right to a real estate commission. The second is the agreement between Wehrley and Butler for a commission from Butler. The third is the

agreement between Wehrley and Perry for payment to Wehrley by Perry of a commission.

First we must discuss the exchange agreement between Wehrley and Perry. The evidence is clear that Wehrley signed the agreement which constituted an offer to Perry, if he (Perry) accepted by 5 August. The evidence indicated he did. Notwithstanding the fact that Butler promised to keep the offer open until then, he, Butler, could still withdraw the offer as to Perry at any time before Perry knew of the existence of the offer:

"As Professor Williston has said, there is nothing that can be regarded as an offer which is not communicated." Foster v. Udall, 10 Cir., 335 F.2d 828, 831 (1964). And:

"An offer which is given without consideration to the offeror can be withdrawn at any time prior to the acceptance by the offeree." Patton v. Paradise Hills Shopping Center, Inc., 4 Ariz.App. 11, 417 P. 2d 382, 389 (1966).

Revocation of an offer, however, must be communicated to prevent an acceptance from changing it into a binding contract:

"The revocation of an offer, however, must ordinarily be communicated to prevent an acceptance from changing it into a binding contract, and it is not communicated to the offeree unless it is actually brought to his knowledge * * * Formal notice is not always necessary, it being sufficient that the person making the offer does some act inconsistent with it, as, for example, selling the property, and that the person to whom the offer was made has knowledge of such act." 17 C.J.S. Contracts § 50D, p. 712, cited in Antwine v. Reed, 145 Tex. 521, 199 S.W. 2d 482 (1947) and Podlasky v. Price, 87 Cal.App.2d 151, 196 P.2d 608 (1948).

We hold in the instant case that there was an offer when Butler signed the exchange agreement with the provisions contained therein and that there was no valid revocation of that offer communicated to Perry or Wehrley before the acceptance by Perry on 5 August. We do not feel that the telephone call by Zona Wells was sufficient notice of Butler's revocation of the written offer previously made and delivered.

The contract of exchange and the agreement for commission from Butler to Wehrley were shown to the extent that reasonable men could not have found to the contrary. There being a valid agreement for exchange of realty, Wehrley has earned his commission from Butler. The trial court was correct in granting a motion for judgment n. o. v. as to the $5,000 commission due Wehrley from Butler.

However, we must disagree with the court below as to the $8,500 for commission to be paid to Wehrley by Perry. The exchange agreement when signed by Butler contained the provision that Perry was to pay Wehrley a commission as "per separate agreement". The evidence is clear that this "separate agreement" was not in existence when Butler signed the agreement on 2 August 1963. Plaintiff had the burden of showing not only this "separate agreement" and the amount thereof, but also that the "separate agreement" was in existence at the time of the signing, 2 August 1963, by Butler. The deposition of Perry admitted in evidence reads as follows:

"Q Did you agree to pay Mr. Wehrley any commission for the sale or transfer of this property?

"A Yes.

"Q How much?

"A Five or 7,000.

"Q Have you paid him anything?

"A The transaction hasn't been consummated, so no.

* * * * * *

"Q I show you this agreement called 'Agreement of Exchange' on Bob Wehrley Realty stationary and indi-

cate to you that it shows August 2, 1963.

"A Approximately 3 days after that.

"Q According to my calendar August 2, 1963, falls on a Friday. Three days later would make August 5th— which would be a Monday, is that correct?

"A That's right, because I was out of town Friday.

"Q You were out of town Friday?

"A Right.

"Q Were you out of town Saturday?

"A And Sunday.

"Q And came back—

"A Monday.

"Q Where were you over the weekend?

"A I have no idea.

"Q When did you return to town, physically return to Phoenix?

"A Sunday night.

"Q So the first opportunity you had to look at this agreement of exchange was on Monday, August 5th?

"A Yes."

 Viewing the matter most strongly in plaintiff's favor, we cannot say that reasonable men would not differ as to this amount, and the trial court cannot grant a judgment n. o. v. as to that amount ($8,-500). It is well established that the trial court must view the evidence most strongly in favor of sustaining the jury verdict and may grant entry of a judgment n. o. v. only where reasonable men would not differ. Diedrich v. Farnsworth, 3 Ariz.App. 264, 413 P.2d 774 (1966).

This matter is admittedly made difficult by the failure of defendant to object to the form of verdict, but we do not feel that the evidence supports the finding of the court as to the $8,500 commission due from Perry to Wehrley as damages by Wehrley in his suit against Butler.

The matter is reversed and remanded to the trial court with directions to enter judgment consistent with this opinion

DONOFRIO and STEVENS, JJ., concur.